## Richmond

VIRGINIA EMPLOYMENT COMMISSION
AND E AND H CORP.

d/b/a LADY "L" BRIDALS

v.

DONNA S. GANTT

No. 0103-87-2

Decided February 7, 1989

632

COUNSEL

Susan T. Ferguson, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellant.

Claire E. Curry (Charlottesville-Albemarle Legal Aid Society, on brief), for appellee.

OPINION

**HODGES, J.**—The Virginia Employment Commission and Lady "L" Bridals appeal the circuit court's decision reversing the commission's denial of unemployment compensation benefits to Donna S. Gantt. The commission reversed the appeals examiner and denied benefits based on its finding that Gantt, an assistant manager who was fired for violating a company rule regarding eating in the store, was discharged for work-connected misconduct.[1] The circuit court reversed the commission's finding of misconduct, ruling that "[t]he single incident of Ms. Gantt's eating breakfast at the store, while violative of the company rule, [was] not conduct of such a nature or so recurrent as to constitute willful or deliberate misconduct sufficient to result in disqualification under Virginia Code § 60.1-58(b)." The court ruled further that the employer had not shown that the rule was reasonably designed to protect a legitimate business interest. On appeal, the issue is whether there was sufficient evidence as a matter of law to support the commission's finding of misconduct. Finding sufficient evidence to support the commission's finding, we hold that the circuit court erred and reverse.

Rules regarding food consumption by employees at Lady "L" Bridals were contained in the employee manual. The rules permitted eating only in designated areas and required that employees wash their hands after eating to prevent staining garments. The evidence revealed that the store manager knew that the rules were

---

[1] An appeals examiner awarded Gantt benefits after finding that her discharge was for the convenience of the employer rather than for misconduct. In addition to the food incident, the evidence showed that the manager and owner were concerned about Gantt's poor sales record, that Gantt was to be demoted in January from assistant manager to bridal consultant with the same salary because she would be having a baby, and that tensions existed in the employer-employee relationship due to excessive personal phone calls and for absence from work without notifying the employer.

violated and that on previous occasions the rules were not enforced.

At a staff meeting in late October, 1985, which Gantt, an assistant manager, attended, the store manager informed all employees that eating breakfast in the store was prohibited in the future. Nevertheless, on November 9, 1985, when the manager was not at work, Gantt and several other employees ordered breakfast and ate it in shifts in the stockroom. The manager fired Gantt when she learned of the incident. Gantt filed for unemployment compensation.

 The purpose of the Unemployment Compensation Act is "to provide temporary financial assistance to [employees] who become unemployed through no fault of their own." *Unemployment Compensation Comm'n v. Tomko,* 192 Va. 463, 469, 65 S.E.2d 524, 528 (1951). Therefore, an individual is disqualified from unemployment compensation if he or she has been discharged for "misconduct connected with his work." Code § 60.2-618(2) (formerly Code § 60.1-58(b)). An employee is guilty of misconduct when he or she

> *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer . . . . Absent circumstances in mitigation of such conduct, the employee is "disqualified for benefits," and the burden of proving mitigating circumstances rests upon the employee.

*Branch v. Virginia Employment Comm'n,* 219 Va. 609, 611-12, 249 S.E.2d 180, 182 (1978) (citing 76 Am. Jur. 2d *Unemployment Compensation* § 52 (1975)).

 Under the *Branch* decision, misconduct is defined in the disjunctive so that either a deliberate violation of a rule or an act or omission showing willful disregard of the employer's interest disqualifies a claimant for benefits. When an employer adopts a rule, that rule defines the specific behavior considered to harm or to further the employer's interests. By definition, a violation of that rule disregards those interests. The rule violation prong, then, allows an employer to establish a prima facie case of misconduct

simply by showing a deliberate act which contravenes a rule reasonably designed to protect business interests. Once the employer has borne the burden of showing misconduct connected with the work, either by violation of a rule or by an act manifesting a willful disregard of the employer's interest, the burden shifts to the employee to prove circumstances in mitigation of his or her conduct. *Id.* at 611-12, 249 S.E.2d 182. If the employee's evidence or the entire evidence fails to show mitigating circumstances, the commission must find that benefits are barred because a rule reasonably designed to protect a legitimate business interest was violated. If, however, the record contains evidence which mitigates the rule violation, the trier-of-fact must balance this against the legitimate business interest being protected to determine whether the employee demonstrated a willful disregard of the employer's interest.

■ Mitigating circumstances are likely to be those considerations which establish that the employee's actions were not in disregard of those interests. Evidence of mitigation may appear in many forms which, singly or in combination, to some degree explain or justify the employee's conduct. Various factors to be considered may include: the importance of the business interest at risk; the nature and purpose of the rule; prior enforcement of the rule; good cause to justify the violation; and consistency with other rules. Therefore, in order to constitute misconduct, the total circumstances must be sufficient to find a deliberate act of the employee which disregards the employer's business interest.

■ The Unemployment Compensation Act provides that the factual findings of the Employment Commission are conclusive on appeal if supported by evidence and in the absence of fraud. Code § 60.2-625(A); *Lee v. Virginia Employment Comm'n*, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985). As the factfinder, the commission is charged with the responsibility of resolving questions of credibility and of controverted facts. The commission must also determine whether the employee's evidence sufficiently mitigates the violation or behavior so as to avoid disqualification because of misconduct. The jurisdiction of the circuit court and of this court is limited to questions of law. Code § 60.2-625(A). The question we must now address is whether these findings of fact are sufficient in law to constitute misconduct.

In doing so, as the circuit court held, we are bound by the commission's finding of fact which was supported by the evidence that Gantt's discharge was a consequence of violating the employer's rule. The circuit court, however, found that although the employer established a deliberate violation of a company rule, it did not establish that the rule was reasonably designed to protect a legitimate business interest. We disagree. The employer's need and desire to have employees available to assist customers, its right not to pay employees for time spent eating, and the need to protect the merchandise from being soiled are all legitimate business interests furthered by the company rule regarding food. Finding sufficient evidence to support the commission's finding that the employer met its initial burden of proof, we hold that the trial court erred in its ruling.

Because the employer met its initial burden of proof, the burden then shifted to the claimant to show evidence in mitigation of her conduct. The commission found that Gantt's evidence was insufficient to mitigate her conduct. The circuit court reversed, holding that the single incident of eating food was not sufficient to constitute misconduct. We disagree.

In finding the single incident sufficient as a matter of law to constitute misconduct, we, like the commission, place great emphasis on the fact that Gantt was an assistant manager in charge of the store when she violated the company rule. Although Gantt held a managerial position which carried with it additional responsibility, she also allowed other employees to order and consume breakfast on company time as well. The employer had a logical expectation that the claimant as assistant manager in charge of its establishment at the time of the incident would not only abide by the rules but would enforce them as well. We concur fully with the commission's reasoning and holdings set forth below:

The claimant . . . was fully aware of the manager's directive that employees would not eat breakfast in the store, and she was responsible as assistant manager, in the absence of the manager, to ensure the directive was carried out. Her personal participation with other employees in violation of the manager's directive showed deliberate defiance of manager's instructions and was a willful disregard of her em-

ployer's interests and the duties and obligations she owed her employer.

* * * *

The claimant's explanation that she had seen employees eating candy bars when on the sales floor while the manager was present in the store is inadequate and insufficient to mitigate her willful violation of the manager's clear directive. Furthermore, it would seem the claimant, in her capacity as assistant manager, would have felt duty-bound to assist the manager in carrying out the rules even when the manager was in the store rather than use any violation she observed when the manager was present to justify personal violations when the manager was absent.

It is clear from the evidence and from Gantt's own admission that she was aware of the new rule prohibiting the eating of breakfast, which was announced at a staff meeting within two weeks of the violation. Further, we reject Gantt's argument that the rule was selectively enforced because the employer did not take action against other employees eating candy bars in the showroom after the new rule was in effect. First, while employee consumption of candy bars may have gone unpunished, there was no evidence that the breakfast rule had been violated and not enforced. When asked at the hearing how many times breakfast eating had occurred after the meeting, Gantt responded, "I saw people eating candy bars on the floor when the manager was present, but I don't know that breakfast happened again." Second, Gantt's position as assistant manager warrants differential treatment from that of the other employees.

Finally, we reject the dissent's position that "in order for violation of a rule to constitute misconduct which disqualifies an employee for benefits the rule must be strictly enforced." *See Peanut City Iron & Metal Co. v. Jenkins*, 207 Va. 399, 250 S.E.2d 120 (1966) (laborer, who dismantled salvaged automobiles, was denied worker's compensation benefits because he violated a safety rule adopted to protect the employees). The dissent's reliance on worker's compensation law is misplaced. While "misconduct" may bar recovery under both the Unemployment Compensation Act and the Workers' Compensation Act, the theories underlying the acts differ so that the same standards do

not apply. "The [Workers' Compensation] Act provides a system of compensation to an employee or his dependents for injury or death from injury arising out of and in the course of the employment, *without regard to fault* as the cause of such injury or death." *Griffith v. Raven Red Ash Coal Co.*, 179 Va. 790, 796, 20 S.E.2d 530, 533 (1942) (emphasis added). The Unemployment Compensation Act, on the other hand, is designed "to provide temporary financial assistance to [employees] who become unemployed *through no fault* of their own." *Tomko*, 192 Va. at 469, 65 S.E.2d at 528 (emphasis added).

For the foregoing reasons, we reverse the trial court and remand the case for the entry of an order consistent with our holdings.

*Reversed and remanded.*

Keenan, J., concurred.

Coleman, J., dissenting,

I would affirm the ruling of the trial court which held, in effect, that claimant's single incident of eating food on the job did not constitute deliberate or willful misconduct disqualifying her for unemployment compensation. Under Code § 60.1-58(b) (now § 60.2-618(2)) an individual is disqualified from unemployment compensation if he or she has been discharged for "misconduct connected with his work." In my view the claimant's violation of the company rule against consuming food on the job did not constitute misconduct because the rule was not strictly nor uniformly enforced.

I agree with the majority that credible evidence in the record supports the commission's factual findings that claimant's discharge was a consequence of violating the employer's legitimate rule against eating in the store rather than the employer's dissatisfaction with her job performance. Thus, we are bound by that finding. Code § 60.2-625(A); *Lee v. Virginia Employment Comm'n*, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985). Therefore, the trial court erred in holding that the employer's rule was not reasonably designed to protect a legitimate business interest. However, whether a rule violation constitutes "misconduct" is a mixed question of law and fact reviewable by this court on appeal. *See Blake v. Hercules, Inc.*, 4 Va. App. 270, 273, 356 S.E.2d 453,

455 (1987).

> The statutory term "misconduct" should not be so literally construed as to effect a forfeiture of benefits by an employee except in clear instances; rather, the term should be construed in a manner least favorable to working a forfeiture so as to minimize the penal character of the provision by excluding cases not clearly intended to be within the exception.

76 Am. Jur. 2d *Unemployment Compensation* § 52 (1975).

A determination of misconduct within the contemplation of Code § 60.2-618(2) takes into consideration both the employer's legitimate business interests and the employee's actions and the mitigating circumstances, if any. *Branch v. Employment Comm'n*, 219 Va. 609, 611-12, 249 S.E.2d 180, 182 (1978). Thus, alleged misconduct, based on a rule violation, includes inquiry into the circumstances which tend to mitigate against the violation being in deliberate disregard of the employer's business interest. In my view the claimant's evidence of mitigation proved that her actions were not in disregard of her employer's legitimate business interest.

But, the primary factor which mitigates Gantt's behavior from being misconduct emanates from the lack of enforcement by the employer of its food rules. First, rules regarding food consumption in the store had been generally unenforced in the past; further, they were not enforced after the meeting in which the breakfast rule was announced. Although the breakfast rule was a change in the policy for food consumption on the premises, when it was promulgated and announced to the employees they were not informed of any change in enforcement policy or that a violation could lead to discharge. Indeed, the violation did not lead to dismissal for all the breakfast-eaters; apparently only Gantt was discharged although others were involved in the same conduct.

When an employer has knowingly tolerated violations of particular rules in the past, it is reasonable to infer that a similar violation of a similar rule does not jeopardize an employer's business interests. An employer may not disregard violations of its rule and then claim that a particular single violation is so hurtful to his or her interests as to constitute misconduct and justify disqualification for benefits. Lack of enforcement promotes noncompliance.

Selective enforcement suggests that interests other than legitimate business ones which the rule protects caused the discharge. I would hold that in order for violation of a rule to constitute misconduct which disqualifies an employee for unemployment compensation benefits the rule must be strictly and uniformly enforced. Habitual disregard of the rule and failure to enforce it mitigates against violations being considered misconduct in the eyes of the employer. An employer who continuously acquiesces in the breach of his or her own rule will not be heard to complain, unless sufficient intervening measures have been taken to notify employees that violations will not be condoned and that a future transgression will invoke sanctions.

Requiring strict enforcement of rules in order for a violation to constitute "willful misconduct" is well-founded in workers' compensation law. In *Peanut City Iron & Metal Co. v. Jenkins*, 207 Va. 399, 150 S.E.2d 120 (1966), the Virginia Supreme Court held that in order for the employer to prevail on the defense of willful misconduct, it must show not only that the claimant violated a well-known safety rule, but also that the rule had been strictly enforced by the employer. Holding that the question of strict enforcement was a mixed question of law and fact, the court reviewed the uncontradicted evidence and reversed the commission's decision that the employer had not strictly enforced the rule. Although *Peanut City* was a workers' compensation claim, the concepts of misconduct in both areas of administrative law are analogous insofar as misconduct in each field bars benefits to employees who are out of work through their own fault. Also, in both instances the doctrine serves to protect the employer's interest in having his rules observed.

Requiring that the employer strictly enforce its rule before a violation can be misconduct is based on sound reason. I would adopt the strict enforcement requirement in unemployment compensation. I find that Gantt's employer did not strictly or uniformly enforce its rules pertaining to food consumption. Absent strict enforcement, the employer's defense of misconduct fails. I do not suggest that "strict enforcement" requires an employer to discharge or suspend an employee each time a rule is violated. Action by the employer which reasonably alerts an employee to the fact that he has violated a rule and that the violation is wrongful, and that indicates a "conscientious, *bona fide* effort on behalf

of the employer to require claimant and the other employees to fully comply with the rule at all times" will suffice. *Peanut City*, 207 Va. at 406, 150 S.E.2d at 125; *see also VEPCO v. Kremposky*, 227 Va. 265, 270-71, 315 S.E.2d 231, 234 (1984).

In an employment-at-will environment, the employer is free, within the limits of public policy, to rid itself of unwanted employees at any time, with or without cause. 12B Michie's Jurisprudence *Master and Servant* § 7 (1978 Repl. Vol.). The commission and the courts, however, determine whether employee "misconduct" was the reason for the discharge. Absent misconduct no disqualification will be imposed for those temporary unemployment benefits which are provided a discharged worker.

Gantt proved circumstances which are sufficient as a matter of law to mitigate her violation of a rule being misconduct. Because the rules regarding food consumption were not strictly enforced, I would hold that her activities did not constitute misconduct and that she is entitled to unemployment compensation benefits. Thus, I would uphold the trial court ruling that Gantt's behavior did not constitute misconduct under Code § 60.2-618(2) although the basis for its determination was error. Accordingly, I would affirm the result reached by the trial court and remand the case with directions that the trial court order the commission to enter an appropriate award.