**Richmond**

ANNETTE G. ROBINSON

v.

HURST HARVEY OIL, INC.

and

VIRGINIA EMPLOYMENT COMMISSION

v.

HURST HARVEY OIL, INC.

No. 1942-89-2

Decided July 9, 1991

COUNSEL

John R. Rellick (Rappahannock Legal Services, Inc., on brief), for appellant, Annette G. Robinson.

Patrice Taylor Johnson, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellant, Virginia Employment Commission.

No brief or argument for appellee, Hurst Harvey Oil, Inc.

**UPON PETITION FOR REHEARING**

OPINION

BENTON, J.—Annette G. Robinson was awarded unemployment insurance benefits by the Virginia Employment Commission. Hurst Harvey Oil, Inc., her employer, appealed the commission's decision to the circuit court, which reversed the award. This consolidated appeal presents two questions for decision: (1) whether the trial judge erred in finding Hurst Harvey Oil, Inc. discharged Robinson for misconduct connected with her work and, assuming an affirmative answer to the first question, (2) whether the trial judge erred in setting aside the commission's finding of mitigating circumstances that qualified Robinson for unemployment insurance benefits. We reverse the trial judge's decision denying benefits to Robinson.

"In any judicial proceedings under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of

the court shall be confined to questions of law." Code § 60.2-625; *see Virginia Employment Comm'n v. Gantt*, 7 Va. App. 631, 635, 376 S.E.2d 808, 811, *aff'd en banc*, 9 Va. App. 225, 385 S.E.2d 247 (1989). The evidence before the commission proved that from August 1987 until her dismissal in September 1988 Robinson worked as an assistant manager and cashier for a convenience store owned by Hurst. When hired, Robinson signed a document that informed her that she could be required to take a polygraph test in the event of cash or inventory shortages. Refusal to take the test would be grounds for dismissal. In addition, Robinson was informed of the policy that required employees to purchase any food they ate. A failure to comply with that policy also was grounds for immediate dismissal.

Wallace Lewis, the supervisor of the store, testified that sales receipts were substantially below what monthly inventory audits indicated they should have been. From August 1987 through July 1988, the audits reported monthly shortages ranging from $330 to $4305. Because of the shortages, Lewis decided to administer polygraph tests to the store employees.

A polygraph examiner tested Robinson on June 14, 1988. The polygraph report indicated that during a pretest interview, Robinson admitted eating about six dollars worth of food per week. The report also stated that Robinson was being deceptive on questions concerning money or goods stolen from the store and that her tension peaked when asked whether she had "stolen as much as $1,600 in money and merchandise." The day following the test, the examiner sent Lewis the polygraph results.

The evidence proves that in the following months Hurst took no disciplinary action and instituted no procedures to monitor or stop the suspected violations. According to Robinson, she was never accused of theft, never warned, and never told her job was in jeopardy. She testified that she continued to "consume bits and pieces of deli food" and that Lewis knew that she and the other employees continued to eat food. On September 7, 1988, Lewis discharged Robinson and two other employees who had faired poorly on the polygraph exam. Lewis testified that Robinson was discharged because of "the results of her work and of the polygraph test." According to Lewis, the three-month delay in releasing Robinson was caused by the difficulty in finding a replacement employee.

On these facts, the commission concluded:

> The claimant obviously deliberately violated these rules by her own admitted actions in eating approximately $6.00 per week of the employer's food without paying for it. In view of this admission, the Commission can only conclude that she was deliberately and willfully violating the standards of behavior expected of her as an employee. The admission she made to the polygraph examiner before taking the test and corroborated by her own testimony at the hearing is sufficient to show that she was taking the employer's merchandise without paying for it even if the polygraph test results themselves were to be ignored. Despite this, the Commission has previously held that such results, when supported by corroborative evidence, can be introduced at hearings before the Commission and may be used to support a disqualification for misconduct.

The commission also concluded, however, that Robinson carried her burden of demonstrating mitigating circumstances that warranted entitlement to unemployment insurance benefits. Citing its prior decisions, the commission invoked the rule that an employer's undue delay in acting upon known rule violations may serve to mitigate misconduct. Finding that the employer's actions constituted condonation of Robinson's misconduct, the commission concluded Robinson was entitled to compensation benefits because of mitigating factors.

The record, taken as a whole, proves by substantial evidence that Robinson was dismissed for misconduct connected with her work. The Supreme Court defined "misconduct connected with . . . work" in the following terms:

> [A]n employee is guilty of "misconduct connected with his work" when he *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a *willful* disregard of those interests and the duties and obligations he owes his employer.

*Branch v. Virginia Employment Comm'n*, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978). The evidence proved that, in violation of written company policy with which she was familiar, Robinson ate

six dollars worth of food per week without paying for it. Moreover, the store continued to lose substantial sums of inventory during Robinson's tenure. "[A] continuing recurrence of . . . violations over a period of time clearly establishes . . . a deliberate and willful misconduct." 76 Am. Jur. 2d *Unemployment Compensation* § 52 (1975).

■ Robinson and the commission contend, however, that even if Robinson was dismissed for misconduct, the three-month delay in terminating her employment amounted to condonation of her acts and was a mitigating circumstance. We agree. "[T]he burden of proving mitigating circumstances rests upon the employee." *Branch*, 219 Va. at 612, 249 S.E.2d at 182. "Evidence of mitigation may appear in many forms which, singly or in combination, to some degree explain or justify the employee's conduct." *Virginia Employment Comm'n v. Gantt*, 7 Va. App. 631, 635, 376 S.E.2d 808, 811 (1989). Various factors may be considered in determining mitigation, including the degree of enforcement of the employer's rule and the delay in enforcing the rules. *See id.*

■ The issue is whether the evidence is sufficient to support the commission's finding that the delay in dismissing Robinson constituted condonation. When, as here, the factual issue to be resolved is within the specialized competence of the agency, we are required to give great deference to the expertise of the administrative agency. *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 243, 369 S.E.2d 1, 7 (1988). It is uncontradicted that in June, Robinson admitted she took food without paying, in violation of Hurst's policy. Hurst was informed of Robinson's admission on the following day. However, Lewis never accused Robinson of theft, never warned her not to take the food, and never told her that her job was in jeopardy. Hurst took no remedial steps until three months later when Robinson was discharged. Under the commission's precedent, when the employer takes no steps to remedy misconduct within a reasonable amount of time after learning of the misconduct, the delay alone may be sufficient to mitigate the employee's misconduct. We hold, therefore, that these circumstances mitigate Robinson's conduct and qualify her for unemployment insurance benefits under the established commission rules.

For these reasons, we reverse the trial judge's decision disqualifying Robinson from benefits under the Unemployment Compensation Act.

*Reversed.*

Baker, J., and Keenan, J.,* concurred.

---

* Justice Keenan participated in the hearing and decision of this case prior to her investiture as a Justice of the Supreme Court of Virginia.