GERALD G. CARTER

v.

EXTRA'S, INC.

No. 0961-91-2

Decided June 2, 1992

536

COUNSEL

Claire E. Curry (Charlottesville-Albemarle Legal Aid Society, on briefs), for appellant.

Roger S. Martin (McGuire, Woods, Battle & Boothe, on briefs), for appellee.

OPINION

**BRAY, J.**—Following termination of employment with Extra's, Inc. (Extras), Gerald G. Carter (claimant) applied to the Virginia Employment Commission (Commission) for unemployment benefits. Extras reported to the Commission that claimant was "Discharged" for misconduct, and he was denied benefits by both the deputy commissioner and, on appeal, an appeals examiner. Claimant appealed to the Commission, which reversed the previous decisions and approved the claim. Extras thereafter petitioned the

trial court for "Judicial Review." Following consideration of the "administrative record, legal memoranda and oral argument," the court found claimant "guilty of misconduct in connection with work" and "not qualified for benefits."

Claimant appeals the trial court's decision, complaining that the court (1) erred in its finding of misconduct, (2) erred in its analysis of the factors material to that conclusion, and (3) failed to properly consider the "mitigating circumstances." We find no error and affirm the trial court.

 Code § 60.2-625 assures "judicial review" in "the circuit court" to "any party aggrieved" by a decision of the Commission. Further, an appeal "may be taken from the decision of the court" to this Court. Code § 60.2-625. In such "judicial proceedings," the "findings of the Commission as to facts, if supported by the evidence and in the absence of fraud, shall be conclusive," and the court's review is "confined to questions of law." *Id.*; *Lee v. Virginia Employment Comm'n*, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985). Thus, on appeal, we "must consider the evidence in the light most favorable to the finding by the Commission." *Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc.*, 4 Va. App. 621, 626, 359 S.E.2d 552, 554-55 (1987).

The record discloses that claimant began employment with Extras as an "electronics technician" on April 1, 1989. All employees were then subject to written "CONDUCT RULES," a provision of which prohibited "alcoholic beverages or controlled or restricted drugs, unless prescribed by a doctor . . . on [Extras] property." The "Rules" further provided that a violation "will be grounds for dismissal." Claimant admitted his awareness of this policy.

After claimant was hired, Extras became concerned that illegal drug activity threatened its welfare and the welfare of its employees. An armed "drug distributor" had "an altercation" with an employee "on company property," and "usage" and "presence" of drugs in the workplace were "causing problems."[1]

---

[1] Absenteeism, diminished employee performance, loss, theft and damage to property, quality control, customer relations and employees' safety and security were specific concerns expressed in the record.

In response, Extras developed a "new drug and alcohol abuse policy" as "a condition of continued employment with the company."[2] This policy was presented to all Extras employees at "a corporate wide meeting" and everyone was requested "to sign" an "ACKNOWLEDGEMENT BY EMPLOYEE" or confer with Extras' officials to discuss "confidentially" any "problems."

At this meeting, claimant complained that his wages did not include submission of "bodily fluids for drug testing" and inquired, "What are you paying us to be tested?" His objections apparently were not resolved and, at the conclusion of the meeting, he submitted an altered acknowledgment form, a copy of which is attached as Appendix A.

Later, at a private meeting with his supervisor and Extras' president, claimant demanded $100 for each urine sample, "take it or leave it." This proposal was rejected by Extras, and claimant was advised "to agree with the policy" or "resign." Claimant declined both options and "was fired."

After Extras protested claimant's subsequent application for unemployment benefits, claimant explained that he had refused to execute the required acknowledgment form because he "didn't understand" the new rules, was "panicked" and wanted "to do something to stall." He denounced the policy as "an invasion of privacy," and would not "give away [his] personal liberties for nothing." Claimant described his demands for payment as an effort to "cut out a negotiating position," an "opening position," to "give . . . . . plenty of time to pedal" and invite a "counter offer."[3] He also stated that he "wanted to keep private" his regular and lawful use of a prescription drug which "relieves anxiety and allows [him] to work," although he understood that disclosure would not have resulted in discharge under the new rules.

---

[2] The written policy was five and one-half pages in length, prohibited the presence of alcohol or drugs on Extras' property, any work-related activity while under the influence of alcohol or drugs and any criminal charges associated with drugs. It specifically required, *inter alia*, that employees submit to body fluid screenings for alcohol or drugs and searches of work areas, including "personal articles" and vehicles on company property. Refusal to cooperate in the execution of the policy or a violation of its provisions subjected employees to "discipline" or "discharge."

[3] Claimant attributed this posturing to his "background in the Orient."

■ Code § 60.2-618 provides that "[a]n individual shall be disqualified for benefits"[4] if "such individual is unemployed because he has been discharged for misconduct connected with his work." Code § 60.2-618(2). Misconduct contemplated by the statute occurs when an employee "*deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer," or manifests "a *willful* disregard of those interests and the duties and obligations he owes his employer." *Branch v. Virginia Employment Comm'n*, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978). Absent "circumstances in mitigation of such [mis]conduct, the employee is 'disqualified for benefits.'" *Id.* at 611-12, 249 S.E.2d at 182. Although bound by the Commission's factual findings, we have previously held that "analyzing an employee's behavior with the disqualification provisions of the statute is a mixed question of law and fact reviewable by this Court on appeal." *Virginia Employment Comm'n v. Sutphin*, 8 Va. App. 325, 327, 380 S.E.2d 667, 668 (1989); *see also Israel v. Virginia Employment Comm'n*, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988).

■ Manifestly, the "purpose of the Unemployment Compensation Act is 'to provide temporary financial assistance to [employees] who become unemployed through no fault of their own.'" *Virginia Employment Comm'n v. Gantt*, 7 Va. App. 631, 634, 376 S.E.2d 808, 810, *aff'd en banc*, 9 Va. App. 225, 385 S.E.2d 247 (1989) (quoting *Unemployment Compensation Comm'n v. Tomko*, 192 Va. 463, 469, 65 S.E.2d 524, 528 (1951)). Consonant with this purpose, the "employer bears the burden of showing" misconduct. *Barkley v. Peninsula Transp. Dist. Comm'n*, 11 Va. App. 317, 320, 398 S.E.2d 94, 95 (1990). However, "[o]nce the employer has borne [this] burden . . . [it] shifts to the employee to prove circumstances in mitigation of his or her conduct." *Gantt*, 7 Va. App. at 635, 376 S.E.2d at 811.

■ The adoption of a rule by an employer "defines the specific behavior considered to harm or to further the employer's interests." *Id.* at 634, 376 S.E.2d at 811. Thus, "*[b]y definition*," the rule establishes that conduct determined by the employer to be consistent with its legitimate business interests, and a deliberate

---

[4] "'Benefits' means the money payments payable to an individual, as provided in this title [Title 60.2, Unemployment Compensation], with respect to his unemployment." Code § 60.2-205.

violation creates "a prima facie case of misconduct." *Id.* at 634-35, 376 S.E.2d at 811 (emphasis added). Absent evidence to "explain or justify" such misconduct and "show mitigating circumstances, the commission must find that benefits are barred." *Id.* at 635, 376 S.E.2d at 811; *Robinson v. Hurst Harvey Oil, Inc.*, 12 Va. App. 936, 940, 407 S.E.2d 352, 354 (1991).

In the instant case, the opinion of the Commission recognizes that claimant was expected to unconditionally acknowledge the new drug policy as a part of his continued employment, that he "declined" to comply and was discharged. Nevertheless, the Commission found claimant "qualified" for benefits. Its opinion noted that "every employer has a legitimate business interest in trying to maintain a workplace . . . free from the dangers and distractions . . . of alcohol and drugs," but the Extras policy was characterized as an "unreasonable violation of [claimant's] right to privacy and the presumption of innocence," an "overbroad rule which was being arbitrarily imposed without adequate notice." In this context, the Commission excused claimant's "error in judgment" as an appropriate, but "misguided protest" to an offensive rule.

We agree with the trial court, however, that claimant's refusal to execute the required acknowledgment of the policy and his related conduct, and not the policy itself, is the dispositive issue in this case. Prior to his discharge, claimant only demanded compensation in exchange for compliance. Despite ample opportunity, he attempted no resolution with Extras of any privacy or other substantive issues. *See Lee,* 1 Va. App. at 85, 335 S.E.2d at 106. Instead, he tried to bargain with Extras, evincing a mind obviously motivated by personal gain rather than constitutional concerns.

While we "give great deference to the expertise of the administrative agency" in the resolution of factual issues, such "specialized competence" is not indispensable to all disputes. *Robinson,* 12 Va. App. at 940, 407 S.E.2d at 354. Further, the "nature of the issue, legal or factual," or mixed, also affects "the degree of deference" and "reviewing courts should not abdicate their judicial function" to a "rubber stamp." *Johnston-Willis, Ltd. v. Kenley,* 6 Va. App. 231, 243-44, 369 S.E.2d 1, 7-8 (1988).

In this instance, we find that the evidence fails to support the Commission's conclusion that claimant's misconduct was

prompted and thus mitigated by any unreasonableness in Extras' drug policy.[5] Without proper excuse, he refused to execute the acknowledgment in violation of a company rule and this constituted misconduct as a matter of law.

Accordingly, the judgment of the trial court disqualifying claimant for benefits is affirmed.

*Affirmed.*

Willis, J., concurred.

Barrow, J., dissenting.

While acknowledging that the factual findings of the commission are conclusive and that judicial review at the trial or appellate level is confined to questions of law, *see* Code § 60.2-625, the majority makes its own factual finding, in conflict with that of the commission, in order to affirm the trial court's reversal of the commission. The majority finds that Carter's initial attempt to obtain money for his compliance with the new drug policy evinces "a mind obviously motivated by personal gain rather than constitutional concerns." The commission, on the other hand, found that Carter's conduct was "not an act of extortion; rather, it was basically a misguided protest of an overbroad rule which was being arbitrarily imposed without adequate notice."

The commission recognized that, while "every employer has a legitimate business interest in trying to maintain a work place which is free from the dangers and distractions caused by the abuse of alcohol and drugs," certain businesses are justified in imposing more stringent requirements than others. It explained that inherently dangerous occupations, such as those involving the manufacture of dangerous chemicals, the operation of dangerous machinery, the operation of motor vehicles, and other businesses whose work is "highly visible to the public or sensitive in nature, such as . . . law enforcement or [those] requiring a security clearance," are businesses that can justify more stringent requirements. However, the commission found that the work of this employer did not justify the stringent requirements — random searches and drug testing — of its policy.

---

[5] We express no opinion with respect to the constitutional or other legal issues raised by provisions of the new drug policy.

Undoubtedly, an employer has the right to impose rules intended to deter the use of drugs and alcohol at the work place. That, however, is not the question in this case. Rather, the question is under what circumstances may an employee be denied unemployment benefits after being discharged for declining to accept the new conditions of his employment. If his refusal constitutes misconduct, he bears the full financial burden of such refusal. If his refusal does not constitute misconduct, unemployment compensation benefits must be paid.

The commission found that the employer's new drug policy, while permissible, was not required by the nature of its business. This conclusion was reasonable and within the commission's authority. Consequently, the commission found that Carter's refusal to comply with the new policy was not misconduct, but only "a misguided protest of an overbroad rule which was being arbitrarily imposed without adequate notice." In my opinion, the trial court, and now this court, have erred in superimposing their judgment over that of the commission. I, therefore, dissent.

# APPENDIX

## ACKNOWLEDGEMENT BY EMPLOYEE

I have read and understand the company's policy on drug and alcohol abuse and I will cooperate fully with company investigations and ~~submit to medical examination for drugs~~ ~~and alcohol.~~ I will cooperate with reasonable searches of ~~my locker,~~ personal property, vehicle, and person by the company. I understand that failure to comply with reasonable management directives concerning this policy will be grounds for discharge.

Conditions

Date: 5-5-89

Employee

*ONLY AT MY PRICE.

*I DON'T HAVE A LOCKER.

witness

Commission Exhibit 4.

(64)