## Salem

BARBARA A. HELMICK

v.

## MARTINSVILLE-HENRY ECONOMIC DEVELOPMENT CORPORATION

No. 1219-91-3

Decided July 14, 1992

COUNSEL

Barbara A. Helmick, pro se.

Douglas K. Frith (Douglas K. Frith & Associates, P.C., on brief), for appellee.

OPINION

**KOONTZ, C.J.**—Barbara A. Helmick (claimant) appeals from the trial court's decision reversing the Virginia Employment Commission's (commission) award of unemployment benefits. The trial court denied Helmick unemployment benefits because she was discharged from her employment with Martinsville-Henry Economic Development Corporation (employer) for misconduct connected with work. Helmick's appeal requires us to decide (1) whether the trial court erred in finding that Helmick was discharged from her job for misconduct connected with her work, and (2) whether the trial court erred in finding that the employer did not condone Helmick's misconduct. We find no error and affirm.

On appeal, " 'the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to ques-

tions of law.' " *Robinson v. Hurst Harvey Oil, Inc.*, 12 Va. App. 936, 937-38, 407 S.E.2d 352, 353 (1991) (quoting Code § 60.2-625). However, whether a claimant may be disqualified from unemployment benefits for work related misconduct "is a mixed question of law and fact reviewable by this court on appeal." *Israel v. Virginia Employment Comm'n*, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988). We find that the commission's findings of fact are supported by the evidence and that there is no suggestion of fraud. Accordingly, we review the findings of the commission.

Helmick was employed by Martinsville-Henry Economic Development Corporation from February 23, 1984 to January 12, 1990 as an office manager. She worked in a two-person office with the executive director. During the first several years of her employment, Helmick experienced no problems with her employment or with the executive director for whom she worked. Few, if any, written policies or procedures existed and Helmick did not have a job description for her position until one was developed effective December 13, 1989. The executive director left in July 1989 and, between that time and September 1989 when a new director was hired, Helmick managed the office and received an additional $1,000 per month.

The first incident between Helmick and the new executive director, Joe Gero, occurred before Gero arrived on the job. Gero was to attend a board meeting on September 29, 1989. Prior to moving to Martinsville, Virginia, he requested that Helmick send him minutes of board meetings for the previous six months by United Parcel Service so that they would arrive before he left on his trip. Helmick sent the materials as directed; however, Gero did not receive them before he left for Virginia.

Upon his arrival at the office, Gero felt that office materials were disorganized and that the files were not properly maintained. When so advised, Helmick stated that she and the former director were comfortable with the appearance of the office. Helmick began the task of organizing the files. Gero also requested that Helmick develop a procedure manual for the office. Initially, Helmick advised Gero that she did not feel a procedure manual was necessary; however, she began the work but did not make progress on it to Gero's satisfaction. Gero also expressed concern over Helmick's personal television set being in the office and when so advised, she removed it.

Early in November 1989, Helmick requested a meeting with Gero to discuss what she felt were communication problems they were having. They met briefly, but continued the meeting the following day, at which time Gero talked about the filing system and other work he wanted done. Because both parties had luncheon engagements, this meeting was cut short. Helmick was frustrated because the items of concern to her were not fully discussed. She told Gero that he had just wasted twenty minutes of her time. She was cautioned to refrain from making such statements in the future.

Shortly after that incident, Gero asked Helmick to prepare an investment report because he was new to the job and because she had prepared such a report in the interim period between directors. Helmick stated that she was not paid $50,000 a year to do the report, that she was not the director, and that it was not her job. No action was taken against Helmick as a result of this incident.

On November 21, 1989, Helmick and Gero attended a Chamber of Commerce breakfast. Following the breakfast, Gero arrived at the office at 8:15 a.m. and Helmick arrived at 9:00 a.m. without explanation as to her delay.

Shortly before Thanksgiving, Gero learned that Helmick, without permission, was planning to leave early the day before Thanksgiving for a family vacation. When confronted, Helmick requested to leave early. There is no indication if permission was granted or if she actually left early that day.

Helmick was also cautioned during her employment about problems with mistakes and telephone messages, and she was instructed how messages were to be taken.

Helmick was asked to type a memorandum on office policy and decorum containing five items to be presented to the personnel committee. She added, without authorization, a sixth item concerning a car allowance and a vehicle for the director. Gero felt that this was inappropriate.

Helmick had given information to a trade magazine in July 1989, during the period between directors. When the article was published in the December 1989 issue of the magazine, it contained information that Gero thought was incorrect and that

should not have been given to the reporter. Helmick was instructed to write a memorandum from the director to accompany the distribution of the article. However, on December 20, 1989, she sent out the memorandum in her own name.

On December 20, 1989, Helmick received a verbal annual review and performance evaluation, at which time Gero discussed with her what was expected in the office. She was placed on a thirty-day probation and Gero suggested that if she wanted to appeal, she should write a memorandum to him that would be communicated to the personnel committee. On December 22, 1989, Helmick wrote a memorandum directly to the board of directors requesting the reasons for her probation and a meeting with the personnel committee. Gero felt that this was a violation of the procedure he had outlined to Helmick.

On December 28, 1989, Helmick left the office at 3:30 p.m. for a 4:00 p.m. doctor's appointment. However, prior to leaving the building, Helmick visited with employees of another business located downstairs until approximately 3:45 p.m. Gero felt that this constituted an abuse of sick leave.

On January 6, 1990, Gero was advised by a board member that Helmick had made derogatory comments in the community about Gero and two other board members. The substance of the comments was that Helmick questioned Gero's competence and accused two board members of standing in the way of her advancement. In addition, Helmick had told a friend that she did not like the director or his management style. The board was concerned about the impact such statements would have in the community.

On January 10, 1990, Helmick left the office for lunch and later called in sick with a headache, stating she would not return for the afternoon. Gero then went to Helmick's desk to turn off equipment and noticed on her calendar what he interpreted to be a 2:00 p.m. appointment that had been erased, but was still legible, and a class scheduled for that evening at a local college. Helmick attended the class after she had recovered from her headache.

On January 12, 1990, near the end of the work day, Gero called Helmick into his office and advised her that she was being terminated. When asked the reason why, Gero stated: "Don't worry, it's performance based." Helmick then cleaned out her office and

left.

The commission held that, although there were acts that alone or in combination might amount to misconduct, the employer condoned or excused them by not disciplining Helmick or advising her that her job was in jeopardy. Although Helmick was put on notice that her job was in jeopardy when she was placed on probation, the incidents that occurred thereafter were found by the commission to be "unproven accusations" or otherwise not proven to constitute misconduct. Thus, the commission held that employer's condonation excused Helmick's misconduct.

The trial court reversed the commission's decision and held that the continuing recurrence of violations demonstrated a willful disregard of employer's interests. Moreover, the trial court found that, as a matter of law, employer did not condone or excuse Helmick's conduct prior to the probationary period.

As a preliminary matter, we address employer's contention that Helmick's appeal is barred by our decision in *Lee v. Lee*, 12 Va. App. 512, 404 S.E.2d 736 (1991) (en banc) because the court's order was merely endorsed "objected to" in violation of Rule 5A:18. The commission endorsed the final order on behalf of Helmick. Helmick, however, argues that she was not given an opportunity to endorse the final order and, therefore, we should entertain her appeal in the interest of attaining the ends of justice. *See Mounce v. Commonwealth*, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987). In *Lee*, we held that the issues presented on appeal were not adequately preserved for our review where the record did not contain any specific objection to a particular ruling of the trial court and counsel merely endorsed the court's order, "seen and objected to." Unlike *Lee*, the trial court here was aware of Helmick's objections and could rule on them during trial. Thus, Helmick has complied with the requirements of Rule 5A:18. *See Lee*, 12 Va. App. at 516, 404 S.E.2d at 738. Consequently, Helmick is not barred by her failure to endorse the court's order.

■ "The purpose of the Unemployment Compensation Act (Act) is 'to provide temporary financial assistance to [employees] who become unemployed through no fault of their own.' " *Virginia Employment Comm'n v. Gantt*, 7 Va. App. 631, 634, 376 S.E.2d 808, 810 (quoting *Unemployment Compensation Comm'n v. Tomko*, 192 Va. 463, 469, 65 S.E.2d 524, 528 (1951)), *aff'd en*

*banc*, 9 Va. App. 225, 385 S.E.2d 247 (1989). Under the Act, an employee who is discharged from employment due to "misconduct connected with his work" is disqualified from receiving unemployment compensation. *Id.* We restate the definition of "misconduct connected with . . . work" set forth in *Branch v. Virginia Employment Commission*, 219 Va. 609, 249 S.E.2d 180 (1978):

> [A]n employee is guilty of "misconduct connected with his work" when he *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a *willful* disregard of those interests and the duties and obligations he owes his employer.

*Id.* at 611, 249 S.E.2d at 182.

■ This appeal does not involve an issue of whether an employee has deliberately violated a company rule. The issue before us is whether Helmick's acts were of such a nature or so recurrent as to manifest a willful disregard of the legitimate business interests of her employer and the duties and obligations she owed to her employer. We have recognized that " 'a continuing recurrence of . . . violations over a period of time clearly establishes . . . a deliberate and willful misconduct.' " *Robinson*, 12 Va. App. at 940, 407 S.E.2d at 354 (quoting 76 Am. Jur. 2d *Unemployment Compensation* § 52 (1975)). An employee's refusal to obey a reasonable directive of his or her employer may constitute misconduct so as to disqualify that employee from unemployment benefits. 76 Am. Jur. 2d *Unemployment Compensation* § 86 (1992).

The evidence shows that Helmick repeatedly refused to follow the reasonable instructions of her employer. When requested to prepare an investment report, Helmick refused to do so, telling Gero that it was not her job and that she was not paid $50,000 a year to prepare the report. Gero also directed Helmick to prepare a memorandum in his name to accompany the distribution of a trade magazine article, but Helmick sent out the memorandum in her own name. Furthermore, Helmick wrote a memorandum directly to the board of directors following her placement on probation, even though Gero explicitly told her to give any such memorandum to him. We do not decide whether any of these incidents, standing alone, constitutes misconduct within the meaning of *Branch*. Rather, we hold that these incidents, when viewed to-

gether, constitute a willful and deliberate course of conduct evincing a disregard of the employer's interests and Helmick's duties and obligations to her employer. Thus, Helmick's actions constituted misconduct as contemplated by Code § 60.2-618, rather than mere displeasure with work performance.[1]

■ "Once the employer has borne the burden of showing misconduct connected with the work, . . . the burden shifts to the employee to prove circumstances in mitigation of his or her conduct." *Gantt*, 7 Va. App. at 635, 376 S.E.2d at 811. The commission held that the acts of misconduct occurring prior to Helmick's placement on probation were excused or condoned because the employer had taken no disciplinary action. We have held that "when the employer takes no steps to remedy misconduct within a reasonable amount of time after learning of the misconduct, the delay alone may be sufficient to mitigate the employee's misconduct." *Robinson*, 12 Va. App. at 940, 407 S.E.2d at 354. In *Robinson*, an employee admitted to taking food without paying for it from the convenience store where she worked, in violation of her employer's rule. Three months later, Robinson's employer discharged her for violation of the company rule. We held that the employer's failure to accuse Robinson of theft, warn her not to take the food, or inform her that her job was in jeopardy constituted a condonation of her misconduct.

As in *Robinson*, "[t]he issue is whether the evidence is sufficient to support the commission's finding that the delay in dismissing [the employee] constituted condonation." *Id.* at 940, 407 S.E.2d at 354. However, unlike *Robinson*, the evidence here fails to show that any delay in discharging Helmick, after Gero was aware of her misconduct, constituted a condonation of that misconduct. Helmick's misconduct consisted of numerous unrelated incidents

---

[1] We find no error in the trial court's reliance on *Spotswood Arms Corp. v. Este*, 147 Va. 1047, 133 S.E. 570 (1926). The trial court cited *Spotswood Arms Corp.* for the principle that the employee is required "to obey the lawful reasonable commands of his [employer], and a refusal or neglect on the [employee's] part to obey such a command . . . is inconsistent with [the employee's] duties to his [employer]." *Id.* at 1064, 133 S.E. at 575. Although *Spotswood Arms Corp.* is a general discharge case, the principles set forth therein are applicable to the analysis in the present case, insofar as they define the employee's duties and the reasonable expectations of the employer. Because the trial court cited *Spotswood Arms Corp.* for the principle that an employee has a duty to carry out the reasonable directives of his or her employer, we find no error in the court's reliance on this case.

which together evinced a disregard of her employer's interest and her duties and obligations to her employer. The employer should not be expected to respond to each individual incident. It is clear that Gero warned Helmick on several occasions that her conduct or behavior was unacceptable and subsequently placed her on probation. Although Gero did not take immediate action in response to all incidents which, taken together, formed the basis for Helmick's discharge, any delay in responding to such conduct was reasonable under the circumstances because it was the recurrence of such conduct that established the grounds for discharge. From these facts, the trial court correctly found, as a matter of law, that Gero did not condone Helmick's acts of misconduct.

Helmick further argues that she was not allowed to work her thirty-day probationary period. We find no authority requiring an employer to tolerate an employee's misconduct merely because the employee's probationary period has not expired. The purpose of a probationary period is to alert the employee that his or her conduct is unsatisfactory, does not meet employer's standards, and that his or her continued employment is conditioned upon the satisfactory performance of job duties and obligations. A probation period is not a guarantee that an employer will retain an employee until the expiration of that period. Consequently, Helmick was not entitled to thirty days of employment after being placed on probation and before being discharged by employer.

In summary, we hold Helmick's repeated refusal to follow the reasonable directives of her employer constituted a willful disregard of her employer's interests and her duties and obligations. Further, because Helmick has failed to show that her employer condoned or excused her misconduct, she has not proven circumstances in mitigation of her conduct. For these reasons, the decision of the trial court is affirmed.

*Affirmed.*

Coleman, J., and Elder, J., concurred.