COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Frank and Clements
Argued at Richmond, Virginia


THE HAVEN SHELTER & SERVICES, INC.

v.      Record No. 2755-07-2

MEMORANDUM OPINION[*] BY

MEGAN E. HAY                                                       JUDGE LARRY G. ELDER
                                                                                      OCTOBER 21, 2008

VIRGINIA EMPLOYMENT COMMISSION

v.      Record No. 2765-07-2

MEGAN E. HAY


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

Richard F. Hawkins, III (The Hawkins Law Firm, P.C., on brief), for
appellant The Haven Shelter & Services, Inc.

Elizabeth B. Peay, Assistant Attorney General (Robert F.
McDonnell, Attorney General; Thomas W. Nesbitt, Assistant
Attorney General, on brief), for appellant Virginia Employment
Commission.

Martin Wegbreit (Central Virginia Legal Aid Society, on briefs),
for Megan E. Hay.


The Haven Shelter & Services, Inc. (employer) and the Virginia Employment

Commission (the commission) separately appeal a ruling of the Richmond Circuit Court

reversing the commission's decision denying the claim of Megan E. Hay (claimant) for

unemployment benefits.[1]  On appeal, employer and the commission contend the circuit court

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We consolidate these appeals, which share an appendix, for purposes of decision only.

erroneously concluded the evidence did not support the commission's finding that claimant committed misconduct disqualifying her from receiving unemployment benefits. We hold the evidence, viewed in the light most favorable to employer, was sufficient to support the commission's finding. Thus, we reverse the decision of the circuit court and reinstate the commission's decision denying benefits.

In the course of an appeal of a commission decision to the circuit court or this Court, "the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive." Code § 60.2-625(A). "As the factfinder, the commission is charged with the responsibility of resolving [both] questions . . . of controverted facts" and "questions of credibility." Va. Employment Comm'n v. Gantt, 7 Va. App. 631, 635, 376 S.E.2d 808, 811 (1989). Further, the commission is not required to articulate its reasons for accepting the testimony of one witness over another. Bullion Hollow Enters., Inc. v. Lane, 14 Va. App. 725, 729, 418 S.E.2d 904, 907 (1992).

An employee shall be disqualified from receiving unemployment benefits "if the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work." Code § 60.2-618. Under settled principles,

> an employee is guilty of "misconduct connected with his work"
> when he *deliberately* violates a company rule reasonably designed
> to protect the legitimate business interests of his employer, or
> when his acts or omissions are of such a nature or so recurrent as to
> manifest a *willful* disregard of those interests and the duties and
> obligations he owes his employer.

Branch v. Va. Employment Comm'n, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978). Under Branch,

> misconduct is defined in the disjunctive so that either a deliberate
> violation of a rule or an act or omission showing willful disregard
> of the employer's interest disqualifies a claimant for benefits.
> When an employer adopts a rule, that rule defines the specific
> behavior considered to harm or to further the employer's interests.

> By definition, a violation of that rule disregards those interests. The rule violation prong, then, allows an employer to establish a prima facie case of misconduct simply by showing a deliberate act which contravenes a rule reasonably designed to protect business interests.

Gantt, 7 Va. App. at 634-35, 376 S.E.2d at 811.

"Although it certainly may justify an employee's discharge, behavior which is involuntary, unintentional or the product of simple negligence does not rise to the level necessary to justify a denial of unemployment benefits." Borbas v. Va. Employment Comm'n, 17 Va. App. 720, 722, 440 S.E.2d 630, 631 (1994). Nevertheless, "a continuing recurrence of . . . violations over a period of time [may] clearly establish[] . . . a deliberate and willful misconduct." Robinson v. Hurst Harvey Oil, Inc., 12 Va. App. 936, 940, 407 S.E.2d 352, 354 (1991); see Helmick v. Martinsville-Henry County Econ. Dev. Corp., 14 Va. App. 853, 421 S.E.2d 23 (1992); Britt v. Va. Employment Comm'n, 14 Va. App. 982, 420 S.E.2d 522 (1992).

If an employer presents *prima facie* evidence of misconduct, the burden shifts to the claimant to prove "circumstances in mitigation of such conduct." Branch, 219 Va. at 611-12, 249 S.E.2d at 182.

> Mitigating circumstances are likely to be those considerations which establish that the employee's actions were not in disregard of [the employer's] interests. Evidence of mitigation may appear in many forms which, singly or in combination, to some degree explain or justify the employee's conduct. Various factors to be considered may include: the importance of the business interest at risk; the nature and purpose of the rule; prior enforcement of the rule; good cause to justify the violation; and consistency with other rules. Therefore, in order to constitute misconduct, the total circumstances must be sufficient to find a deliberate act of the employee which disregards the employer's business interest.

Gantt, 7 Va. App. at 635, 376 S.E.2d at 811. Absent proof of circumstances in mitigation, established to the satisfaction of the fact finder, the employee is "disqualified for benefits." Branch, 219 Va. at 611-12, 376 S.E.2d at 182.

Applying these principles in Branch, the Supreme Court considered the circuit court's affirmance of a decision of the commission concluding that Branch was disqualified for benefits due to misconduct. Id. On the facts of that case, the Supreme Court held "[t]he record show[ed] that [Branch] was familiar with the company rule; that he was repeatedly warned that it would be invoked; and that he offered no evidence in mitigation of its breach."[2] Id. at 612, 249 S.E.2d at 182.

The evidence in claimant's case, viewed in the light most favorable to the employer, the prevailing party before the commission, see Code § 60.2-625, also established that claimant was familiar with the company rule at issue, which required her to follow the orders given to her by her supervisor; that she was repeatedly warned not to violate the rule; and that, although she offered evidence in mitigation of her breach of her supervisor's directives, the commission found her testimony purporting to excuse or mitigate her behavior was not credible.

Claimant signed a written statement indicating she had received a copy of employer's handbook, and the handbook specifically stated that claimant was required to "adhere to and comply with" not only the written procedures in the handbook but also "verbal directions given by the Executive Director and/or other supervisors." The commission accepted the assessment of claimant's supervisor, Colleen Jordan, that claimant had the intelligence and ability to perform her job properly but that she refused to conform her behavior to meet employer's requirements.

Jordan also testified about two occasions on which she discussed with claimant the importance of following orders and working within her job description. On July 22, 2005,

---

[2] The Supreme Court rejected Branch's claim that the conduct underlying the alleged breach was not misconduct because it was not "connected with his work," but it ultimately concluded the evidence was insufficient to prove violation of a company rule. 219 Va. at 612-13, 249 S.E.2d at 183. "That rule authorized termination of employees who suffered three garnishments 'within 12 months of each other,'" which the Court interpreted liberally in favor of Branch, concluding it meant that all three garnishments had to have occurred in the same twelve-month period. Id. at 613, 249 S.E.2d 183.

Jordan and Executive Director Ellen Yackel met with claimant for more than three hours and discussed reports concerning claimant's behavior up to that time. Jordan emphasized to claimant the importance of working within the limits of her job description as a victims' advocate, and Yackel advised claimant "that if her conduct" and "effectiveness as an advocate" "did not improve[,] . . . she could face termination." Claimant admitted she had been warned about the need to "kind of scal[e] back . . . [her] advocacy."

When Jordan met with claimant again on the afternoon of August 26, she again impressed upon claimant the importance of working "within the guidelines of what the Haven requires and with supervision." When claimant stated she "had a difficult time being supervised" and "did not like to be supervised," Jordan emphasized that "as long as [claimant] was employed with the Haven she would have a supervisor," Jordan.

In terminating claimant for misconduct, employer relied on three specific incidents about which it learned after the August 26, 2005 counseling session. The first involved Jordan's direct instruction to claimant that she was not to sit at counsel table when accompanying a client to a hearing. Jordan repeated this instruction to claimant both individually and in at least one group meeting. Jordan explained this prohibition came about when, in proceedings before the juvenile judge who routinely heard matters in all five jurisdictions in which employer aided clients, a defense attorney objected to having employer's staff members sit at counsel table because they were not attorneys. Jordan explained that the judge "had instructed us that we are not attorneys and that counsel table is for attorneys; and that we are not allowed to sit at counsel table." Claimant also received instruction concerning how to avoid the unauthorized practice of law, which indirectly reinforced Jordan's explicit instruction that employer's advocates were not to sit at counsel table. Despite these instructions, claimant sat at counsel table with a client in court during a protective order hearing on August 29, 2005.

The commission found claimant failed to prove sufficient circumstances to mitigate her misbehavior, and the evidence supports that finding. The commission was free to reject, as it did, claimant's assertion that Jordan told her merely, "I do not think [the judge] will let you [sit at counsel table], but you can try." As the commission reasoned,

> It is doubtful that the claimant would have asked the substitute judge's clerk for permission to sit there if she did not know of the controlling policy or prohibition. . . . The bottom line is that the chief judge and [claimant's] employer had established the prohibition against Shelter advocates sitting at the counsel table. . . . [C]laimant's asking the substitute judge's clerk for permission to sit there, in light of these prohibitions, was in and of itself, improper conduct.

Claimant admitted knowing that Jordan had served as employer's victims' advocate for over seven years prior to claimant's assuming the position, but claimant said that allowing the victim's advocate to sit at counsel table "was regular practice" in the different jurisdictions in which she had served in that role before coming to work for employer. Claimant averred "the nature of the job" was "determined by what the local arena will allow," that "in [her] experience there is a lot of trial and error," and that she "was not as concerned [as Jordan was] about . . . [running] up against those boundaries." Jordan testified claimant admitted in a meeting of August 26, 2005, that claimant "had a difficult time being supervised" and that "that was the reason that she was fired from her former job." This evidence, viewed in the light most favorable to employer, supported a finding that claimant deliberately violated employer's rule, given verbally by her supervisor on multiple occasions, and that she failed to establish any circumstances in mitigation of that violation.

Claimant's second rule violation occurred in conjunction with the same protective order hearing in which she sat at counsel table in contravention of Jordan's instructions. Immediately prior to that hearing, when claimant met with the domestic violence victim seeking the protective order, claimant "wrote out the talking points for [the victim] to take with her when she had to

testify." Jordan testified that a document outlining the role of a domestic violence advocate, in the form of a list of "do's and don'ts," hung on the wall of claimant's office "from the first day that she started work" and that claimant attended training where the proper role of a domestic violence advocate was discussed. Jordan testified she also personally discussed the proper role of an advocate with claimant on numerous occasions and had instructed claimant that she could aid a client in "narrow[ing]" "what she was going to say on the stand" but that claimant also "ha[d] been told repeatedly [that a victims' advocate] cannot write and put words in client's mouths." Finally, the evidence established that before claimant improperly wrote talking points for the victim on August 29, 2005, she "took the pen and paper away from the victim and said, 'I know I am not supposed to do this, but I am going to do it anyway,'" expressly indicating she knew her behavior was prohibited.

Claimant admitted in her testimony before the commission that she engaged in this prohibited behavior. She offered an explanation in mitigation of her behavior, saying the victim was "having a hard time" and was "miswriting words and crossing stuff out" and that claimant's writing the talking points for the client "was about [not wanting to] wait[] for the client to struggle through her failed attempt" to do it herself. This evidence, viewed in the light most favorable to employer, again supported a finding that claimant deliberately violated employer's rule and failed to establish any legitimate circumstances in mitigation of that violation.

The third incident on which the commission relied involved claimant's "submitting forms to her employer that misrepresent[ed] her time and services for the day of August 15 2005," behavior the commission "also [found] very troubling." The evidence, viewed in the light most favorable to employer established that one of claimant's clients had a protective order hearing scheduled for Monday, August 15, 2005, at 9:00 a.m. and that, although claimant knew about the hearing, she arrived twelve to twenty minutes late for it and, thus, was unable to speak to the

client prior to the hearing. Further, despite her late arrival, she completed her time sheet in a fashion indicating she had arrived on time, at 9:00 a.m., and she marked on related paperwork the checkbox indicating she had provided "Legal Accompaniment" services, which would have been proper only if she had "actually go[ne] to court with [the] client and provide[]d support services *during* [the] . . . civil matter." (Emphasis added). Finally, Jordan testified that employer had a VA-DATA Manual that contained a written explanation of how properly to complete the checkboxes and that, in addition, she had spoken to claimant on "numerous occasions" regarding how properly to mark the checkboxes. Jordan said claimant's "response ha[d] always been[, 'W]hen I worked [for my previous employer,] Safe, this is the way we did it.[']"

Claimant testified, claiming she did not know her client had a hearing that morning. She admitted she arrived at the courthouse after 9:00 a.m. and still put 9:00 a.m. on her time sheet, but she claimed that other employees engaged in similar behavior. This evidence supported a finding that, although claimant knew her client had a protective order hearing and claimant had been "trained in what constituted legal accompaniment and legal companion services," she arrived late for the hearing and "did not work the time or perform the client services that she subsequently represented that she had worked or performed to her employer."

Thus, the evidence of these three particular instances of claimant's violating employer's rules supported the commission's finding that "[w]hen the claimant failed to conform her behavior to the Shelter's expectations and her supervisors' specific instructions, but rather persisted in violating her employer's instructions, which were known to her, she committed work related misconduct." These findings were sufficient to support the commission's conclusion that claimant was disqualified from receiving unemployment benefits.

Finally, contrary to the ruling of the circuit court, neither our decision in Borbas, 17 Va. App. 720, 440 S.E.2d 630, nor in Whitt v. Ervin B. Davis & Co., 20 Va. App. 432, 457

S.E.2d 779 (1995), contains the requirement that "there must be 'evidence that appellant . . . demonstrated an ability to perform her job satisfactorily'" before she may be found to have committed misconduct disqualifying her from receiving unemployment benefits.

Our decision in Borbas merely recited one type of circumstantial evidence upon which an employer may rely in its attempt to prove a claimant's poor job performance was volitional behavior rising to the level of misconduct disqualifying her from receiving benefits. 17 Va. App. at 723-24, 440 S.E.2d at 632. In Borbas, we specifically stated that we "*appl[ied] the standard enunciated in Branch to the facts found by the commission,*" and that *on those facts*, which involved Borbas's violation of three unrelated prison security procedures and contained no indication that Borbas exhibited "a period of adequate job performance prior to [her] breaches of security," the evidence was insufficient as a matter of law to support the commission's ruling that Borbas's "'acts or omissions [were] of such a nature or so recurrent as to manifest a *willful* disregard'" of her employer's interests. Id. (quoting Branch, 219 Va. at 611, 249 S.E.2d at 182 (emphasis added)). Thus, in Borbas, we held merely that the evidence as a whole was insufficient to prove Borbas's behavior in violating three unrelated security procedures over a period of approximately fourteen months was willful.

We distinguished the facts in Borbas from those in Robinson, 12 Va. App. at 939-40, 407 S.E.2d at 354, and Helmick, 14 Va. App. at 859-60, 421 S.E.2d at 26-27, in which the employees engaged in clearly volitional behavior that contravened either established company policy or the direct orders of a supervisor. We also distinguished Borbas from Britt, 14 Va. App. at 985-87, 420 S.E.2d at 524-25, in which the employee also engaged in clearly wrongful, volitional acts—cursing and talking back to his supervisor—on three separate occasions.

In Whitt, we cited Borbas for the proposition that where "[a] deliberate violation of a company rule is not involved[,] . . . the record must establish that an employee's poor

performance did not result merely from inexperience or an inability to perform the task assigned." 20 Va. App. at 437, 457 S.E.2d at 781. In so doing, we implicitly recognized that proof "that the employee had demonstrated an ability to perform [her job] adequately," as discussed in Borbas, was merely one way of meeting the requirement of establishing that the "poor performance did not result merely from inexperience or . . . inability." Id. We also noted that "the provision of counseling and warnings received from employer" was relevant to assessing the evidence of willfulness. Id. at 437, 457 S.E.2d at 782.

In claimant's case, unlike in Borbas, the evidence supported a finding that claimant had the intelligence and training to do her job properly but that she admitted having a "difficult time being supervised." The evidence also supported a finding that, like in Robinson, Helmick, and Britt, claimant engaged in deliberate, volitional behavior that directly contravened written manuals, her training, and the orders of her supervisor and that she engaged in at least three such acts over the limited period of only one-and-one-half months. All of these incidents occurred after claimant had been counseled about the importance of working within her job description and warned "that if her conduct" and "effectiveness as an advocate" "did not improve[,] . . . she could face termination." Two of these acts occurred within days after claimant was again cautioned to work within the restrictions set out by her supervisor.

Therefore, whether or not the evidence supported a finding that "claimant demonstrated a satisfactory performance of her job duties on some occasions," it was nevertheless sufficient to support the commission's finding that the acts for which claimant was fired were willful acts of misconduct justifying its decision to deny benefits.

For these reasons, we hold the evidence, viewed in the light most favorable to employer, was sufficient to support the commission's finding that claimant was discharged for misconduct connected with her work. Thus, we reverse the decision of the circuit court and remand to the

- 10 -

circuit court with instructions to remand to the commission for reinstatement of the

commission's decision denying benefits.

Reversed and remanded.