## CIRCUIT COURT OF THE CITY OF RICHMOND

Martin E. Hulbert

v.

Chesapeake Computerworks, Ltd.,
and Virginia Employment Commission

August 12, 1994

Case No. HE-390-1

BY JUDGE MELVIN R. HUGHES, JR.

This case is an appeal of a decision of the Virginia Employment Commission denying unemployment compensation benefits. The question, according to the Commission finding, is whether there was evidence to support the decision that the plaintiff-appellant "left work voluntarily without good cause" under § 60.2-618(1), Code of Virginia of 1950, as amended. Plaintiff disputes this finding, maintaining that the Commission "misapplied the law concerning whether an employee's separation is due to discharge or to voluntary separation." Plaintiff also argues that if his separation from employment were voluntary, the record does not support the finding that it was "without good cause."

Plaintiff disputes some of the specific factual statements made by the Commission in its decision denying benefits. In summary, the following are the salient facts the record reveals and about which the parties have no significant disagreement. Plaintiff began his association with Chesapeake Computer Works, Ltd., the employer, in September, 1988. Before his separation on March 6, 1992, plaintiff at varying times was a consultant or employee of the company. During part of this time and at the time he left the company, plaintiff was vice president and had paid $60,000 for stock he owned in the company. In June, 1990, plaintiff and Chesapeake entered into a buy-sell agreement regarding valuation and first right of refusal of stock in favor of any shareholder in the event of a sale. At this time, plaintiff was brought on as an employee of the company. Also, then,

Chesapeake offered an employment agreement to plaintiff which changed plaintiff's compensation, provided a noncompete provision in the event plaintiff left the company, described new job duties, and modified the buy-sell stock agreement. Plaintiff did not accept the employment agreement.

Thereafter, over a period of months into 1991, the parties negotiated but were not successful in coming to terms on the proposed employment agreement. In October, 1991, plaintiff proposed that there be a separation agreement which would look to a separation date in six months. Again, the parties could not agree. Thereafter, in February, 1992, Chesapeake changed plaintiff's job duties and changed his compensation from a flat salary to a salary based on production. On February 28, 1992, plaintiff, through his attorney, informed Chesapeake by letter that he planned to leave the company. Later, Chesapeake, through its president, told plaintiff his letter would be accepted as his resignation if Chesapeake was not informed otherwise by noon, the following day, March 6, 1992. On that day, having not heard from plaintiff, Chesapeake's president informed plaintiff that the February 28th letter was accepted as his resignation and asked plaintiff to leave with his belongings.

The Commission's finding of fact, if supported by the evidence, are conclusive on review. *Virginia Employment Comm'n v. Gannt*, 7 Va. App. 631, 635, 376 S.E.2d 808, 811, *aff'd en banc*, 9 Va. App. 225, 385 S.E.2d 247 (1989). Further, the standard of review of a decision of an administrative agency is whether there is substantial evidence that a reasonable mind might accept as adequate to support the findings made. *Craft v. Virginia Employment Comm'n*, 8 Va. App. 607 (1989). Further in unemployment compensation appeals, as here, Virginia Code § 60.2-625(A) requires that "[I]n any judicial proceeding under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." In the instant case, there are no allegations of fraud, so the Court's task is to see if the record supports the Commission's findings and whether those findings comport with law.

First, the court will address whether plaintiff was discharged or voluntarily terminated from his employment. The Commission correctly analyzes in its brief the point of determining whether there is a discharge or voluntary leaving. That point is simply determining whether the separation is employer-initiated or employee-initiated. On this issue the evidence of

the plaintiff's attorney's February 28, 1992, letter is most telling. The letter states in pertinent part:

> The recent developments simply confirm my earlier recommendation to Gene [Hulbert] that he separate employment. Even though Gene may have given conflicting signals to Gerry [Saunders] about this issue in the past months, it is now very clear that Gene should make plans to leave the Company . . . . Having established that Gene will leave the employment of the company, two issues must be discussed-compensation for work performed prior to Gene's employment with the Company and the payment to Gene for his stock . . . . Any settlement would, of course, contain the releases referred to in my earlier letter, and we still need to discuss certain "unemployment issues" also addressed in that letter. In addition, because Gene may be without employment for some period after he leaves the company, we should try to place Gene in the best position to qualify for unemployment benefits. (App., Commission Exhibit # 4, pp. 1-2.)

In light of the parties having negotiated for months an employer-tendered employment agreement without success, and considering that they had later discussed terms of an employee-tendered separation agreement, also without success, it is reasonable to conclude, as did the Commission, that plaintiff's separation came about by his own hand when he said he "will leave the employment" rather than by the employer's. For the same reasons, it is also reasonable that the employer accepted the letter as a notice of resignation and set a time when it would become effective. The letter was reasonably determined to be a measure both sides used to bring the impasse on the parties' employment relationship to an end.

Next, the issue of whether plaintiff had good cause to voluntarily terminate his employment. An employee is disqualified from receiving unemployment benefits if the Commission finds that the employee voluntarily left work without good cause. Va. Code § 60.2-618(1). The Court of Appeals has articulated the standard for determining good cause to leave work as follows:

> The Commission has adopted and held firmly to the premise that an employee who, for some reason becomes dissatisfied with his work, must first pursue every available avenue open to him whereby he might alleviate or correct the condition of which he

complains before relinquishing his employment . . . . He must take those steps that could reasonably be expected of a person desirous of retaining his employment before hazarding the risks of unemployment.

*Lee v. Virginia Employment Comm'n*, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985).

Applying the foregoing standard to the instant case, the court finds that plaintiff had good cause to terminate his employment. As noted above, the terms, conditions and pay of his employment had been adversely modified. Specifically, his salary had been effectively reduced in half in February, 1992, even though the parties had been negotiating on an employment agreement for months without success. While the employer was free to do this unilaterally, for the purposes of considering eligibility for unemployment compensation, this event along with the length of time the parties used to resolve their differences, through the means available, negotiation, have legal significance. The employer and the Commission do not dispute the change in compenstion occurring in February, 1992. The proposed employment agreement which, again, had been the focus of the parties' negotiation for months, would have restricted plaintiff's ability to compete with Chesapeake for one year after termination of the employment relationship and materially altered the condition of the buy-sell agreement, thereby affecting his investment. These factors constituted good cause for plaintiff's resignation. The record indicates that plaintiff took reasonable steps over a period of time to resolve his conflicts with Chesapeake before voluntarily leaving his employment.

Accordingly, while there is a basis in the record for the Commission's findings of fact, on the question of law, the Court finds that these facts show that the plaintiff took all reasonable steps of a person desirous of retaining his employment. Plaintiff left employment for good cause because of changes in the employment conditions, after a period of time, during which he had exhausted all reasonable avenues to come to an accommodation with his employer, without avail. For these reasons, the Commission's decision is erroneous as a point of law and is reversed.