## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

William M. Mills

    v.

Virginia Employment
Commission et al.

April 10, 2003

Case No. CH02-999

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this unemployment compensation appeal, the claimant, Mills, concedes that he voluntarily quit his employment but contends that it was for good cause. An appeals examiner agreed with Mills, but the Commission disqualified Mills for benefits finding that he left work without good cause.

### Facts

Mills was employed as an auto mechanic by Handwork, t/a Affordable Automotive. On January 17, 2002, about two months after he began working there, Mills was working on a vehicle in the employer's shop. Handwork came to Mills' station and complained that he was taking too long with the task assigned to him. Mills responded by asking Handwork if he wanted to do it himself. Handwork assigned the work to another mechanic. Handwork went to his office, then summoned Mills. In the office, Handwork reproved Mills for

his insolence. Of course, there is disagreement about exactly what was said and how it was said. Nevertheless, at some point, Handwork told Mills that this is America and he could quit if he did not like the work. Mills accepted the suggestion and asked Handwork if someone could help him pack up his tools.

Mills applied for unemployment benefits. A Virginia Employment Commission deputy reviewed the claim, made a record of facts, and disqualified Mills on the basis that he voluntarily left his job without good cause.

Mills appealed. After a telephonic hearing in which only Mills participated, the appeals examiner concluded that Mills had left with good cause.

Handwork appealed. A special examiner for the Commission vacated the appeals examiner's decision, finding that the record was insufficient. The case was remanded for a further hearing.

Another telephonic hearing was conducted. Again, the hearing examiner found good cause for Mills' departure.

Again, Handwork appealed. On November 19, 2002, the Commission reversed the decision of the hearing examiner because Mills left work voluntarily without good cause. On November 25, 2002, the Commission rejected Mills' request for reconsideration.

Mills petitioned for judicial review on December 17, 2002. The parties waived ore tenus presentations and submitted memoranda. As provided by statute, the Commission certified the record of proceedings.

## Decision

The judiciary's role in unemployment compensation determinations is clearly defined by statute and decisional law. In such cases, the findings of the Commission as to the facts are conclusive and binding if supported by the record and in the absence of fraud. The scope of the judiciary's review is ordinarily confined to questions of law. Virginia Code § 60.2-625; *Lee v. V.E.C.*, 1 Va. App. 82 (1985). The resolution of questions of controverted facts and credibility lies with the Commission. *V.E.C. v. Gantt*, 7 Va. App. 631 (1989).

Whether an employee had good cause to voluntarily quit his job is a mixed question of law and fact. *Umbarger v. V.E.C.*, 12 Va. App. 431, 404 S.E.2d 380 (1991). Thus, obviously, the issue is subject to judicial review. Nonetheless, in undertaking the review, the court must be mindful of the deference accorded the Commission's findings related to factual aspects of the

issue, especially those aspects associated with credibility and the resolution of controverted facts.

Mills, aware of the standard of review explained above, argues that the Commission erred in two respects. First, he says, the commission's misinterpretation of the evidence and relevant case law regarding the purported "evolution" of Mills' claim constitutes an error of law. Second, he contends, the Commission's analysis of the circumstances of Mills' departure is a misinterpretation of the evidence amounting to an error of law.

Interpretations of evidence are not questions of law. This is true even when, in the view of an appellant, there has been a misinterpretation of the evidence. As the phrase implies, an interpretation of evidence is an analysis of the facts; thus, a misinterpretation of evidence is a mistaken or erroneous analysis of the facts, not a mistake or error of law. The statute provides two exceptions to this principle: if the interpretation has no support in the record, or if the interpretation is tainted by fraud, a court should refuse to accept the interpretation and reverse the result.

Here, the Commission's interpretations of the evidence are not misinterpretations. Even if one could successfully argue that there is a better view of the facts than the one adopted by the Commission, such an argument would avail Mills nothing because the Commission's view, or interpretation, of the facts is fully supported by the record.

In his initial claim for benefits, Mills said that he voluntarily quit his employment. He said he was told twice if he did not like what his employer was saying he could leave, so he did.

To the deputy who reviewed his claim, he elaborated as follows. He said that he was working on a car when Handwork came in the shop and told him he was taking too long to fix it. Mills said to Handwork, "Would you like to do it?" Handwork was "very angry," he gave the task to another employee, and summoned ("called") Mills into his office. There, Handwork twice told Mills that this is America and he could quit if he wanted to do so. Handwork told Mills not to "get up in his face" again. There was no profanity, but Mills "knew he was very mad." When Handwork told him a second time he could quit, Mills "left and got my tools."

By the time the case was heard by the hearing examiner, Handwork "yelled" at Mills to go to his office, where Mills found Handwork in a "towering rage" clinching his fists and waving his arms. Mills said he felt "physically threatened" and unsure whether Handwork's anger was about to explode into "aggressive action." Mills quit after Handwork told him a second time that he could quit "if he did not like the way he was being treated." The hearing examiner found that Handwork's conduct amounted to "a stream of

verbal abuse . . . accompanied by violent gestures" which caused Mills to be "legitimately concerned for his safety."

The Commission rejected those embellishments and the hearing examiner's factual findings based on those embellishments. The Commission correctly observed that Mills' story underwent a "distinct evolution" in the record, rendering his account less believable.

The Commission then interpreted the facts in the record differently, concluding that the circumstances of Mills' departure were akin to those in *Mason v. 7-Eleven* (Comm's Decision 13417-C July 3, 1980), where the Commission found that the employee did not have good cause for voluntarily quitting her job. As noted above, this determination is supported by the record.

Once it is established that an employee quit his job voluntarily, the burden is on the employee to show that he did so for good cause. *Actuarial Benefits v. V.E.C.*, 23 Va. App. 640, 478 S.E.2d 735 (1996). Here, the Commission decided that Mills had not shown good cause because, in essence, the Commission chose to believe Mills' first and freshest accounts of what occurred, not the distinctly different version he later related to the hearing examiner. The Commission did not error in its conclusion.

## Conclusion

Restricting its review as instructed in § 60.2-625, the court holds that the Commission has committed no error of law and its findings of fact are supported by the record. Accordingly, the petition will be denied and the Commission's decision affirmed.