COURT OF APPEALS OF VIRGINIA

Present:    Judges O'Brien, AtLee and Senior Judge Clements
Argued by videoconference


JOHN DOE

                                             MEMORANDUM OPINION[*] BY
v.       Record No. 0734-21-4             JUDGE RICHARD Y. ATLEE, JR.
                                                 JULY 26, 2022

VIRGINIA EMPLOYMENT COMMISSION,
 ACES GROUP LLC AND
 INSPERITY PEO SERVICES

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Judith L. Wheat, Judge

John Doe, *pro se*.

Elizabeth B. Peay, Senior Assistant Attorney General (Mark R.
Herring,[1] Attorney General; Donald D. Anderson, Deputy Attorney
General; Heather Hays Lockerman, Senior Assistant Attorney
General and Chief, on brief), for appellee Virginia Employment
Commission.

No brief or argument for appellees Aces Group LLC and Insperity
PEO Services


Appellant John Doe appeals the circuit court's order affirming the decision of the

Virginia Employment Commission (the "VEC" or "Commission"), which denied Doe

unemployment benefits after concluding that he had been discharged for misconduct.  On appeal,

Doe raises thirty assignments of error.  His assignments of error can be loosely categorized as

follows:  (1) the VEC's processes and procedures violated his right to due process, (2) the circuit

court erred by not allowing him to present evidence of fraud committed by the VEC and

employer, (3) the circuit court erred by not finding bias on the part of the VEC's agents, (4) the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

circuit court erred by affirming the VEC's decision that he had been discharged for misconduct, (5) the circuit court erred by not ruling on certain motions and by refusing to admit certain evidence, (6) the circuit court denied Doe due process, and (7) the circuit court erred by not finding misconduct on the part of the VEC's counsel. For the following reasons, we affirm the decision of the circuit court.

## I. BACKGROUND

We "must 'consider the evidence in the light most favorable to the finding by the Commission.'" *Smith v. Va. Emp. Comm'n*, 59 Va. App. 516, 519 (2012) (quoting *Va. Emp. Comm'n v. Trent*, 55 Va. App. 560, 565 (2010)). "If the commission's findings are supported by the evidence, they are binding on appeal." *Trent*, 55 Va. App. at 565 (quoting *McNamara v. Va. Emp. Comm'n*, 54 Va. App. 616, 624 (2009)).

So viewed, the evidence shows that Insperity PEO Services employed Doe from August 13, 2018, through August 7, 2019. Insperity is an employment organization that places employees with various clients. It placed Doe with Aces Group, LLC, a government contractor. Doe worked full time at Aces Group.

When Doe started with Aces Group, the company gave Doe an employee handbook that set out all the company's policies. One such policy required employees to complete time sheets before the end of the reporting period and, ideally, to complete them daily.

On July 31, 2019, one of Doe's supervisors sent him a text message asking him to complete his time sheets. The text also informed Doe that if he did not complete his time sheet

by 8:00 p.m. that evening, the supervisor would submit payroll without his hours.[2]  She also indicated that she has had to remind him every pay period and that they needed to meet the following week to discuss the issue.

Doe responded at 8:03 p.m. saying that he had submitted his time sheets.  The supervisor again texted him that a meeting was necessary.  Doe texted the supervisor that he did not think a meeting was required because he did not believe time sheets were required for the type of fixed-price contracts that he worked on.  Doe asked where such a requirement was stated and commented that he did not understand why he was being asked to submit his time sheet before the end of the working day.  He also told the supervisor he did not appreciate the threat that his pay would be impacted.  The supervisor simply responded, "A meeting is required.  I will reach out to you for a meeting next week."

On August 5, 2019, Jason Marshall, the president of Aces Group, reached out to Doe and told Doe he wanted to discuss the time sheet issue and a memorandum of concern that Aces Group had received from the government.  Marshall tried to arrange a meeting that afternoon.  Doe primarily teleworked,[3] and Doe informed Marshall that he was unable to meet that afternoon as he was working from home.  Doe explained that he had client commitments and parenting

---

[2] The exact language of the text message is as follows:

> [John] it's Leanne with the broken record of fill out your time sheets, if they are not filled out by 8 pm EST then I will submit payroll tomorrow without your hours.  I tried to call you which I shouldn't have to do every pay period but your mail box is full.  By law and regulation time sheets are to be filled out daily.  A reminder is sent to your inbox daily as a reminder.  We need to have a meeting next week to discuss this issue.  Please email and/or call me.  Thank you.

[3] Doe was aware there was some official paperwork to be completed in order to telework. His supervisor had not provided him with the paperwork.

responsibilities. Marshall offered to meet at Doe's home, but Doe rejected that offer as inappropriate. Marshall instructed Doe to work onsite for the rest of the week. Doe admitted that he did not work onsite on August 5 or August 6.

Also on August 5, Doe contacted a human resource representative for Insperity, and he complained that Aces Group had threatened to withhold his pay. He also, for the first time, asserted that Aces Group was aware of a disability that impacted his ability to submit time sheets on time. Doe also informed Marshall that he considered the change to his telework agreement to be retaliation for his complaint about the threat to withhold his pay. Marshall denied that it was retaliation, and he arranged to meet Doe after Doe's client meeting at the Pentagon on August 7.

After Doe's client meeting on August 7, Marshall approached Doe to conduct the meeting. Doe initially refused to meet; according to him, he refused because his complaint about the threat to withhold pay had not been resolved. After being informed that his laptop would be taken, Doe agreed to meet. He requested a human resources representative (from Insperity) be present. That request was granted, and the representative participated by phone.

At the meeting, Marshall asked Doe what he had been working on at home. Doe asked to speak privately with the human resources representative and that request was also granted. Doe expressed his concerns that his complaints about the threat to withhold pay had not been resolved. The human resources representative then spoke with the supervisors without Doe. When Doe returned, he was again asked what he had been doing. During the subsequent proceedings, Doe admitted he had been asked this question, but he explained that the circumstances made him believe it was retaliation for the time sheet issue. Doe did not respond to the question, and Marshall informed Doe that his services were no longer needed.

Doe filed a claim for unemployment benefits on August 14, 2019. A deputy for the VEC determined that Doe was terminated for misconduct and was therefore disqualified from

receiving benefits. Doe argued that he was denied due process because he was not permitted to participate in a fact-finding interview prior to the decision. The Commission record indicates that an employee contacted Doe twice. The first time was on September 10, 2019, and the caller left Doe a voicemail indicating Doe should call back before 2:30 p.m. on September 12 to provide a statement. Doe called twice on September 12 and left a voicemail indicating he was calling to provide his statement. The Commission contacted Doe a second time on September 12, 2019, and it advised him to call back no later than September 16 to make the statement. The Commission also informed him that if he did not make the statement by 3:30 p.m. on that date, the decision would be made on the available record. Doe admits to receiving the first call, but he claims he did not receive the second call. Doe did not call back prior to the deadline, and the deputy issued its decision without his statement. Doe appealed the decision.

After an initial continuance, a hearing was scheduled with an appeals examiner for December 13, 2019. Doe asked the Commission to issue subpoenas to seventeen different people and to issue subpoenas *duces tecum* for relevant employment records. Doe's initial request listed the service address as "The Pentagon, Washington, D.C." The Commission denied his request, and it informed him that the address was outside the Commonwealth of Virginia. Doe argued that the Pentagon was in Virginia even though it had a different mailing address. He also offered to arrange a private process server to serve the subpoenas, which the Commission rejected because local sheriffs serve VEC subpoenas. Doe finally provided the Commission with the correct address and necessary information around 4:00 p.m. on December 11, 2019. The Commission denied the request for subpoenas the following day. The record indicates that because the requests came in so late, there was no time to issue and serve them prior to the December 13, 2019 hearing. Additionally, the reviewer indicated that many of the requests were denied as not relevant to Doe's claims or because reasons for the request were not provided.

Doe participated in the December 13, 2019 hearing. The employer did not. The appeals examiner went through all the exhibits with Doe. She also questioned Doe and took his testimony. At the end of the hearing, Doe asked to read a letter into the record. When he informed her that the letter was "like ten pages," she asked him to email it to her and agreed to keep the record open to receive it into evidence as Exhibit 12. She also asked if there were any other facts he would like to present or a closing statement he wanted to make. The exhibit did not make it into the record, and the appeals examiner ultimately affirmed the decision of the deputy commissioner. Doe appealed that decision.

Doe requested a hearing before the Commission. After the Commission granted Doe an initial continuance, the hearing was scheduled for April 28, 2020, at 1:00 p.m. Prior to the hearing, Doe asked the Commission to take additional evidence. The special examiner took the issue under advisement.

Due to COVID-19, the hearing was conducted via telephone. As with the first level appeal, Doe participated, but the employer did not. Following the hearing, Doe filed a written challenge to the interests of the special examiner. He alleged that the special examiner exhibited bias, prejudice, and a lack of impartiality. The special examiner denied Doe's challenge.[4] She also affirmed the denial of his subpoena requests, denied his request to present additional evidence, and affirmed the decision of the appeals examiner disqualifying Doe from receiving benefits. Finally, the special examiner also concluded that despite Doe's claims, Doe had, in fact, received a fair hearing before the appeals examiner.

---

[4] In her ruling, the special examiner noted that she had informed Doe that the hearing could not continue "indefinitely." Despite this statement and Doe's allegations that there were no accommodations for his disability, we note that the special examiner allowed the hearing to continue for two hours and twenty-seven minutes when a hearing (with two parties participating) normally lasts only an hour.

Doe received the special examiner's decision on May 12, 2020. He responded via email, "Please note my appeal of each and every decision made by the commission in my case . . . ." On May 13, 2020, the Chief Administrative Law Judge sent Doe a letter. The letter indicated that the administrative law judge was treating Doe's May 12, 2020 email as a "reconsideration request" as permitted by statute and a renewal of his challenge to the interest of the special examiner. The judge denied his challenge to the special examiner's interests. The judge also concluded that the evidence in the record supported the Commission's findings of fact. The letter informed Doe that his next course of action was to appeal to the circuit court.

Doe responded that the May 12 email was not his formal motion to reconsider. He also continued to bombard the VEC with emails complaining about the process and procedures employed, how he was treated, and demanding information. He also continued to send new documents and recordings that he wanted transcribed and added to the agency record. On May 22, 2020, he filed a "Request for Reconsideration." The administrative law judge sent Doe another letter on May 27, 2020, declining to revisit the matter. The judge again informed Doe that his next remedy was in the circuit court.

Doe filed his petition for judicial review in the circuit court on June 11, 2020.[5] The circuit court conducted a hearing on December 21, 2020.[6] Following the hearing, the circuit

---

[5] After filing his petition, Doe also filed multiple motions and requests for subpoenas. Among these filings, Doe requested a subpoena *duces tecum* for his communications with the Clerk of the Circuit Court, and he tried to subpoena seventeen different employees of the VEC. Because we find that Doe's assignments of error relating to these issues are procedurally defaulted, we do not go into detail about the motions and requests.

[6] Although Doe submitted a transcript of the circuit court hearing as an exhibit to his motion to reconsider, that transcript was not created in compliance with the Rules of the Supreme Court of Virginia. The transcript was not created by a reporter "sworn to take down and describe the proceedings faithfully and accurately to the best of their ability." Rule 1:3. Doe concedes that it is not "100% accurate." Nor is there any indication that it was properly filed in compliance with Rule 5A:8. Accordingly, the transcript is not properly before us.

court issued a letter opinion affirming the decision of the Commission.  It concluded that the evidence was sufficient to prove that Doe was fired for misconduct, and it agreed with the Commission that Doe testified to the evidence relied upon.  The circuit court also concluded that the Commission did not err in finding Doe's mitigation evidence insufficient to justify Doe's conduct.  Additionally, the circuit court concluded that Doe was not denied due process during the Commission proceedings.  As part of the due process ruling, the circuit court found that the Commission's decision not to issue subpoenas did not violate Doe's due process rights, and the Commission did not abuse its discretion in so doing.  Finally, it also concluded that there was no evidence of bias on the part of the appeals examiner.  Doe now appeals to this Court.

## II. ANALYSIS

### A. *Failure to Include Sufficient Argument in Violation of Rule 5A:20(e)*

Rule 5A:20(e) provides that the opening brief "must" contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error."[7]  "The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Ducharme v. Commonwealth*, 70 Va. App. 668, 674 (2019) (quoting *Fadness v. Fadness*, 52 Va. App. 833, 850 (2008)).  "Statements unsupported by argument, authority, or citations to the record do not permit appellate consideration." *Parks v. Parks*, 52

---

[7] Rule 5A:20(e) also provides, "[w]ith respect to each assignment of error, the standard of review and the argument—including principles of law and the authorities—must be stated in one place and not scattered through the brief."  Doe's arguments for most of his assignments of error are scattered throughout both the assignment of error and argument sections of his brief.  Even in the argument section, he does not state his argument (including principles of law and the authorities) for each assignment of error in one place.  Rather he scatters his arguments for each assignment of error throughout the entire argument section of his brief.  Thus, even where Doe does provide argument, it violates Rule 5A:20(e).  To the extent we can decipher which argument pertains to which assignment of error, we will address it.  Where we cannot make that determination, we will not be an advocate for Doe and create his arguments for him.  We will consider the failure to comply with Rule 5A:20(e) significant, and we will not address those issues.

Va. App. 663, 664 (2008) (quoting *Cirrito v. Cirrito*, 44 Va. App. 287, 302 n.7 (2004)).

Ignoring the rule and addressing the case on the merits "would require this [C]ourt to be an

advocate for, as well as the judge of the correctness of, [appellant's] position on the issues he

raises." *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (second alteration in original)

(quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734-35 (2008), *aff'd in part, vacated in part*,

279 Va. 52 (2010)).  If we find "'a party's "failure to strictly adhere to the requirements of Rule

5A:20(e)" is significant,' this Court may treat the question as waived." *Id.* (quoting *Parks*, 52

Va. App. at 664).

Doe provides absolutely no argument, analysis, or legal authority for assignments of error

13, 15, 27, and 30.[8]  His brief lacks even conclusory statements relating to these issues.  This is

insufficient under Rule 5A:20(e).

---

[8] These assignments of error (verbatim) are as follows:

> 13. The circuit court erred by not sustaining or addressing
>     appellant's objection to the clerk refusing to issue his
>     subpoenas.
>     . . . .
> 15. The circuit court erred by not sustaining or addressing
>     appellant's objection to the circuit court's denial of his request
>     to examine the Commission staff including the hearing
>     examiners regarding their conduct prior to and during the
>     hearings, the basis for their findings and opinions, and their
>     knowledge of laws related to appellant's allegations in support
>     of mitigation (FLSA, FAR, FCA, Whistleblower Reprisal,
>     ADEA, ADA, etc.), which is required to properly adjudicate
>     his case.
>     . . . .
> 27. The circuit court erred by not granting the appellant's
>     unopposed motions:  motion for order to seal, motion for order
>     to produce transcripts, motion for order to comply with FOIA,
>     and motion for order authorizing depositions.
>     . . . .

In relation to assignments of error 2,[9] 3, 10, 11, 12, 18, 21, 23, 25, 26, 28, and 29,[10] Doe

does not provide any argument or legal authority in the argument section of his brief. Below

30. The circuit court erred by not finding the Commission attorneys in contempt of court for filing an unredacted version of Doe's case file with the court over the appellant's objection while the motion for a protective order was pending before the court and for not finding that this was done with malice to impugn Doe's reputation, and the court erred in issuing its opinion letter with his name and email address on it and refusing to hear arguments as to the reasons for his filing under pseudonym and his motion for a protective order.

[9] Doe argues in his second assignment of error that Code § 60.2-123 is unconstitutional. Code § 60.2-123 provides, "Any individual or employing unit appearing before an officer of the Commission may be represented by counsel or other duly authorized agent. However, no such counsel or agent representing a claimant shall either charge or receive for such services more than an amount approved by the Commission." Doe contends that this statute violates due process because it made it impossible to find an attorney.

Yet during the hearing before the special examiner, Doe indicated that the reason he did not have counsel was because he had not yet "been able to properly evaluate to determine whether or not it was worth [his] investment . . . to obtain counsel." Additionally, Doe did not raise this issue in his petition for judicial review. Accordingly, it was not presented to the circuit court and is not preserved for our review. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . .").

[10] These assignments of error (verbatim) are as follows:

2. The circuit court erred by not holding the portion of Va. Code § 60.2-123 restricting and requiring approval of attorney compensation to be unconstitutional.
3. The circuit court erred in holding that the Commission was entitled to a presumption of regularity despite allegations, admitted and proffered evidence of appellant which clearly rebuts the presumption.
    . . . .
10. The circuit court erred by rendering a final judgement [sic] without considering the brief of appellant (appellant).
11. The circuit court denied Doe due process through the circuit court clerk's conduct.
12. The circuit court erred by not addressing appellant's objection to his disparate treatment regarding case notifications via email.
    . . . .

- 10 -

these assignments of error in the assignment of error section of the brief, he does make brief statements. These statements, however, are merely conclusory. They range from a single sentence to a paragraph, but none of them contain any legal authority or principle. Conclusory statements that something is unconstitutional or violates due process is not legal argument. *See Bartley*, 67 Va. App. at 745. Consequently, none of these conclusory statements are sufficient to satisfy the requirements of Rule 5A:20(e).

---

18. The circuit court erred by not finding that the Commission abused its discretion.

. . . .

21. The circuit court erred by finding Doe made "inconsistent statements at best" particularly as it pertains to evidence of his disability and its effect on his life including at his employer; and for not allowing him to introduction medical evidence to support his contentions that the proceedings at the Commission were discriminatory.

. . . .

23. The circuit court erred by not finding that the Commission should have investigated Doe's allegations that its staff falsified the record by claiming to have made a call which it did not, despite Doe's providing telephone record proof (that Commission then omitted from its record.).

. . . .

25. The circuit court erred by not finding Commission process of handwriting illegible notes into its records prevented the controversy from being properly presented and amounts to organizational incompetence at best, and deliberate deceit at worst particularly with regard to obtaining subpoenas.

26. The circuit court erred by not finding that the director of the first level appeals intentionally violated claimant's constitutional rights to confront witnesses.

. . . .

28. The circuit court erred by not finding that the Commission exhibited bias and acted with gross indifference to Doe's rights to privacy.

29. The circuit court erred by not finding that when the Commission refused to provide Doe with an electronic copy of the case record, that they demonstrated ongoing bias intended to disrupt the claimant's ability to make his case.

Below assignment of error 1,[11] Doe makes passing reference to Rule 3:8. But he does not explain how the Commission's answer failed to comply with the cited rule (either there or in the argument section of his brief), and he does not make any argument beyond conclusory statements. *Mitchell v. Commonwealth*, 60 Va. App. 349, 353 (2012) (citation to one case and statute was "insufficient to satisfy Rule 5A:20(e)"). A bare statement that something violates a particular rule does not satisfy Rule 5A:20(e).

Doe does have a specific heading in the argument section of his brief relating to assignment of error 6.[12] In the first sentence, he sets out a legal principle and legal authority. The second sentence, however, cuts off mid-sentence before he provides any argument or legal analysis about how the legal principle applies to the facts of the case. There is no further argument. This too is insufficient to satisfy the requirements of Rule 5A:20(e).

For assignment of error 17,[13] Doe does have two subsections in the argument section of his brief relating to his bias allegations. These subsections make conclusory statements about each act of the Commission that Doe contends were examples of the Commission's bias. These subsections, however, do not set out any legal principles or legal authority. *See Bartley*, 67

---

[11] Doe's first assignment of error is: "The circuit court erred by denying appellant's motion to strike the Commission's answer over appellant's objection that the petition failed to address material allegations in the petition, and then subsequently denying."

[12] Doe's sixth assignment of error is: "Clerk's conduct and unfair procedures created what became an undisclosed conflict of interest with the presiding judge."

[13] Doe's assignment of error 17 is as follows:

> The circuit court erred by not finding that the Commission
> exhibited bias by, among other things, falsely claiming all
> communications between Doe and the Commission were in the
> record when they were not, including the entire second binder's
> worth of communications, and continuing to use Doe's old address
> for communications, and denying his right to waive service instead
> of them delivering things deliberately to the wrong (old) address.

Va. App. at 745 (finding appellant's argument "consists solely of conclusory statements unsupported by any legal analysis or authority"). Nor does he explain why these acts are examples of bias. As such, these arguments are insufficient under Rule 5A:20(e).

Doe utilized the "'throw everything at the wall and hope something sticks' approach to appellate advocacy" that this Court has previously condemned. *Coe v. Coe*, 66 Va. App. 457, 470 (2016) (quoting *Fadness*, 52 Va. App. at 850-51). This "tactic 'is as unappreciated as it is ineffective.'" *Id.* (quoting *Fadness*, 52 Va. App. at 851). "When a party believes the circuit court erred, it is the duty of that party 'to present that error to us with legal authority to support their contention.'" *Id.* (quoting *Fadness*, 52 Va. App. at 851). For most of his assignments of error, Doe did not do so. We find that his failure to comply with Rule 5A:20(e) for each of the listed assignments of error is significant, and those assignments of error are waived.[14]

B. *Failure to Assign Error to the Court Below (Assignments of Error 4 and 5)*

In assignments of error 4 and 5,[15] Doe assigns error to the Commission rather than to the rulings of the circuit court. "The Court of Appeals of Virginia is a court of limited jurisdiction." *Tesla, Inc. v. Va. Auto. Dealers Ass'n*, 68 Va. App. 509, 512 (2018) (quoting *Commonwealth v. Lancaster*, 45 Va. App. 723, 730 (2005)). "As a court of limited jurisdiction, 'we have no

---

[14] We recognize that Doe is proceeding *pro se*. But "[e]ven *pro se* litigants must comply with the rules of court." *Francis v. Francis*, 30 Va. App. 584, 591 (1999). "[T]he 'right of self-representation is not a license' to fail 'to comply with the relevant rules of procedural and substantive law.'" *Id.* (quoting *Townes v. Commonwealth*, 234 Va. 307, 319 (1987)).

[15] These assignments of error (verbatim) are as follows:

> 4. Commission erred by refusing to account for uncontested facts which were favorable to Doe demonstrating its bias.
> 5. The Commission arbitrarily and capriciously found facts in its ruling and unreasonably inferred facts on behalf of the absentee employer which is not supported by the record and was material to the erroneous ruling and harmful to Doe's case.

jurisdiction over appeals except that granted us by statute.'" *Id.* (quoting *Lancaster*, 45 Va. App. at 730). Code § 17.1-405(1) authorizes this Court to hear appeals from "[a]ny final decision of a *circuit court* on appeal from (i) a decision of an administrative agency, or (ii) a grievance hearing decision issued pursuant to § 2.2-3005." (Emphasis added.) It is the circuit court that has jurisdiction to review the actions of the Commission, and this Court then reviews the decisions of the circuit court. Code § 60.2-625. Thus, we only have jurisdiction to review actions of the circuit court, and we do not directly address errors the Commission made except to the extent we are reviewing the circuit court's decision related to an agency action. *Saady v. Va. Emp. Comm'n*, No. 0787-20-2 (Va. Ct. App. Jan. 12, 2021) ("However, no statute permits the appeal of the Commission decision directly to this Court.")[16]; *see also* Rule 5A:20(c)(2) (providing that "[a]n assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court . . . is not sufficient. If the assignments of error are insufficient, the appeal will be dismissed."). Because these assignments of error refer only to acts of the Commission, we are without jurisdiction to review them.

### C. *Subpoena Process (Assignment of Error 24)*

Doe argues that the "circuit court erred by not finding the Commission's process for obtaining witnesses and document subpoenas as enacted to be unconstitutional." Given his use of the words "as enacted," it seems that Doe's assignment of error contends that the statute or regulation itself is unconstitutional on its face. His argument on brief, however, does not challenge the face of the regulation at issue—in fact, he points to it as authority for the Commission to grant his subpoena requests. Rather, Doe argues that the Commission's

---

[16] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Mitchell v. Commonwealth*, 73 Va. App. 234, 248 n.9 (2021) (quoting *Blowe v. Commonwealth*, 72 Va. App. 457, 468 n.10 (2020)).

*application* of the regulation is unconstitutional as a violation of due process.  Facial challenges and as applied challenges are not the same.  *Toghill v. Commonwealth*, 289 Va. 220, 228 (2015).  Thus, his assignment of error does not encompass the argument he makes on brief.

"An assignment of error is not a mere procedural hurdle an appellant must clear in order to proceed with the merits of an appeal.  Assignments of error are the *core* of the appeal." *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 122 (2017).  We are "limited to reviewing the assignments of error presented by the litigant." *Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017).  "Consequently, we do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error." *Id.* at 290.  Because Doe's argument about the process is not encompassed within his assignment of error, we do not address it.

### D.  *Depositions (Assignment of Error 19)*

Doe argues that "the circuit court erred by not finding [the] Commission abused its discretion when it misstated the law about the permissibility of depositions, and then denied Doe's opportunity to depose his witnesses."  Doe claims that a VEC employee told him that the VEC cannot conduct depositions.  He argues that this is incorrect and points to 15 VAC 5-80-40, which authorizes the VEC to conduct depositions.

Pursuant to 16 VAC 5-80-40(A), the VEC has "the power to administer oaths, to take depositions, certify to official acts, issue subpoenas, compel the attendance of witnesses and the production of books, papers, correspondence, memoranda, and other records, and to take such action as may be necessary in any hearing."  Thus, the VEC does have the authority to conduct depositions.  But while subsection (A) gives the VEC authority to conduct depositions and issue subpoenas, 16 VAC 5-80-40(B) defines the VEC's authority to issue subpoenas.  It provides,

> Upon the request of any party to a proceeding, the Clerk of the Commission, in the name of the commission, may issue subpoenas requiring the attendance of witnesses at any designated time and place fixed by the special examiner or appeals examiner *for the hearing of a claim or any issue therein*.

16 VAC 5-80-40(B) (emphasis added).

Contrary to Doe's claims, the VEC employee did not tell Doe that depositions are not permitted. The employee told Doe that Doe could depose witnesses if he could convince them to agree to it. The employee explained, however, that the VEC's subpoena power extended only to compelling witnesses to attend a hearing. Thus, the employee did not lie; he was relying on a different part of the regulation governing the VEC's subpoena authority. Accordingly, the circuit court did not err.

### E. *Evidentiary Hearing and Fraud (Assignments of Error 7, 14, 22)*

On review, "the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." *Trent*, 55 Va. App. at 567 (quoting Code § 60.2-625(A)). Doe contends that the circuit court erred when it refused to allow him to present evidence of fraud. He contends that the circuit court should have allowed him to present evidence of extrinsic fraud committed by the employer, and he also argues that he was entitled to an evidentiary hearing to present evidence of procedural irregularities and intrinsic fraud committed by the VEC.

In *Jones v. Willard*, 224 Va. 602 (1983), the Supreme Court of Virginia considered the jurisdiction of the circuit court to consider allegations of fraud in the VEC process. The employee in *Jones* alleged that the employer fired her and then lied when it told the Commission she was not fired but "temporarily relieved of duty." *Id.* at 604. She also testified that she did not testify at the hearing because the employer made statements that she interpreted as threats. *Id.* at 605. In her petition for judicial review, she alleged that the record was incomplete and that

the decision was the result of fraud committed by the employer. *Id.* at 604. Interpreting an earlier version of Code § 60.2-625(A), the Court held that the circuit court has original jurisdiction over fraud allegedly committed by members or agents of the VEC. *Id.* at 606. It also concluded that where a party alleges

> in his petition for review that the decision was procured by extrinsic fraud committed by the successful party and submits with the petition a proffer of proof, verified by affidavits of witnesses, the circuit court shall remand the cause to the Commission for a hearing on the issue if, upon review of the proffer and argument by counsel, the court finds the proffer sufficient as a matter of law to establish a *prima facie* case of such fraud.

*Id.* at 608. Thus, *Jones* distinguishes between allegations of fraud on the part of the VEC and on the part of the employer. Doe makes both types of allegations, and we will address each in turn.

### 1. Allegations of Fraud against the Employer

Doe did not expressly allege fraud against the employer in his petition for review to the circuit court. Nor did he allege that the Commission's decision was procured by extrinsic fraud committed by the party. Doe alleged only that "[t]he Commission erroneously found that [Doe] refused to meet with the employer, after it had been misled by the employer." He also stated that the Commission must take it as fact that the employer misled the Commission because the employer did not appear to refute that fact.

Assuming without deciding that Doe's allegation against the employer is sufficient, Doe has not met the other requirements set out in *Jones*. Doe did not submit with his "petition a proffer of proof, verified by affidavits of witnesses." *Id.* *Jones* does not provide an unqualified right to remand upon a mere allegation of fraud on the part of the employer. The proffer is required for the circuit court to assess whether the proffer is "sufficient as a matter of law to establish a *prima facie* case of such fraud." *Id.* Without the proffer of proof, the circuit court could not make such a determination. Accordingly, *Jones* did not require the circuit court to

- 17 -

remand the case to the Commission for a hearing on Doe's allegations of extrinsic fraud committed by the employer.

## 2. Allegations of Fraud against the VEC

Allegations of fraud against the VEC fall within the original jurisdiction of the circuit court. "[W]here fraud is relied on, the [pleading] must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defence [sic] accordingly, and since [fraud] must be clearly proved it must be distinctly stated." *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295 (1996) (second and fourth alterations in original) (quoting *Ciarochi v. Ciarochi*, 194 Va. 313, 315 (1952)). To prevail on a claim of actual fraud, a litigant "must prove by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto. Ins. v. Remley*, 270 Va. 209, 218 (2005) (quoting *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 85 (1999)). To prevail on a claim of constructive fraud, a litigant must prove "that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *Mortarino*, 251 Va. at 295. To properly plead a claim of either type of fraud, Doe was required to plead each element with particularity.

Doe's petition for judicial review did not plead fraud with sufficient specificity. He did not indicate which type of fraud he was alleging, nor did he sufficiently plead the elements of either type of fraud. At best, his petition alleged only a false representation.[17] His claims did not

---

[17] Doe alleges multiple misrepresentations by VEC employees. The only one that he specifically refers to as fraud is his claim that he was denied an informal evidentiary hearing "based on a lie told by an unknown VEC commission staff member, specifically that someone had contacted me at a specific time on my cell phone." His other allegations are likewise not pled with sufficiently particularity to state a cause of action for fraud.

- 18 -

identify the agents, officers, or employees that allegedly perpetrated the fraud, nor did he set out the time of the alleged fraudulent act as required. *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 858 (1978). He did not plead that the misrepresentation was intentional and knowing, rather than a mistake. He did not plead that the false representation was material or that he relied on the representation. Although Doe did plead that he did not receive an informal fact-finding interview because of the allegedly false representation, this is insufficient to plead damage because he also states that he subsequently received a *de novo* hearing. Accordingly, Doe's petition for judicial review does not plead fraud with particularity sufficient to state a cause of action for fraud.[18]

Doe did not properly plead fraud, nor did he argue fraud to the circuit court. *See* Rule 5A:18. Even if we were to review the transcript of the circuit court hearing, which is not properly before us, there is no indication that Doe presented the issue of fraud to the circuit court. Doe's argument during the hearing was that the evidence was inaccurate or incomplete, but he did not argue that it was so because of fraud (rather than error or some other circumstance). Nor did he provide the circuit court with authority for his argument. Raising the issue for the first time in his motion to reconsider is not sufficient.

F. *Merits of the Commission Decisions (Assignments of Error 8 and 9)*

Doe contends that the circuit court erred by concluding that the evidence was sufficient to "prove Mr. Doe engaged in insubordination or otherwise misconduct." Even if Doe did engage

---

[18] Furthermore, the issue of fraud is not preserved. Rule 5A:18 requires a party to make an objection at the time of the ruling. This is to allow the circuit court "an opportunity to rule intelligently on objections." *Maxwell v. Commonwealth*, 287 Va. 258, 264-65 (2014) (quoting *State Highway Comm'r v. Easley*, 215 Va. 197, 201 (1974)). "For the circuit court to rule intelligently, the parties must inform the circuit court 'of the precise points of objection in the minds of counsel.'" *Id.* at 265 (quoting *Gooch v. City of Lynchburg*, 201 Va. 172, 177 (1959)). Furthermore, the objection must be timely. *Bethea v. Commonwealth*, 297 Va. 730, 744 (2019).

in misconduct, he contends that the circuit court erred in agreeing with the Commission "that there was insufficient evidence of mitigation."

"In all 'judicial proceedings' involving VEC appeals, 'the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.'" *Smith*, 59 Va. App. at 520 (quoting Code § 60.2-625(A)). "[A] reviewing court cannot substitute its own judgment for the agency's on matters committed by statute to the agency's discretion." *Id.* (quoting *Trent*, 55 Va. App. at 568).

The General Assembly "intended unemployment benefits to be paid only to those who find themselves unemployed 'without fault on their part.'" *Trent*, 55 Va. App. at 568 (quoting *Israel v. Va. Emp. Comm'n*, 7 Va. App. 169, 172 (1988)). In furtherance of that policy, "[a]n employee shall be disqualified from receiving unemployment benefits 'if the Commission finds such individual is unemployed because he has been discharged for misconduct connected with his work.'" *McNamara*, 54 Va. App. at 626 (quoting Code § 60.2-618). Among other things, it is well settled that "misconduct involves an intentional violation of 'a company rule reasonably designed to protect the legitimate business interests' of the employer." *Trent*, 55 Va. App. at 568-69 (quoting *Brady v. Human Res. Inst.*, 231 Va. 28, 32 (1986)). "The very adoption of a rule by an employer 'defines the specific behavior considered to harm or to further the employer's interests.'" *Williamson v. Va. Emp. Comm'n*, 56 Va. App. 14, 22 (2010) (quoting *Va. Emp. Comm'n v. Gantt*, 7 Va. App. 631, 634 (1989)).

> The employer's rule, of course, must advance "legitimate" business interests. To be legitimate, however, an employer's rule need not be a model of workplace governance or aspire to what some might view as best business practices. It need only be a reasonable effort by an employer to manage its workforce and to enforce its own expectations of workplace order. In this context, legitimate simply means *not* illegitimate.

*Id.* (citation omitted) (quoting *Trent*, 55 Va. App. at 569). Additionally, insubordination, or "an employee's refusal to obey a reasonable directive of his or her employer may constitute misconduct so as to disqualify that employee from unemployment benefits." *Helmick v. Econ. Dev. Corp.*, 14 Va. App. 853, 859 (1992); *see also Wood v. Va. Emp. Comm'n*, 20 Va. App. 514, 518-19 (1995).

Here, the record is sufficient to demonstrate that Doe refused to obey a reasonable directive of his employer. The record indicates that Doe received a text message on July 31, 2019, from his employer's HR supervisor instructing him to complete his time sheet. The same text message indicated both that it was not Doe's first time being late to fill out his time sheets and that a meeting was required to discuss the issue. The employer's policy required employees to complete time sheets prior to the end of the reporting period, and Doe received a copy of the handbook with all company policies at the time he was hired. Doe disputed the necessity of filling out time sheets for a fixed price contract, and he was again informed that a meeting was necessary the following week to discuss the issue.

On August 5, 2019, the employer's president, Jason Marshall, requested a meeting with Doe at his workspace at the Pentagon. The record reflects that this meeting was to discuss both the time sheets and a memorandum of concern Aces Group had received from the government. Because Doe was working from home, he refused to meet in person. Although Doe primarily teleworked, Marshall instructed Doe to work from the Pentagon for the remainder of the week. They agreed to meet on August 7, 2019, after Doe's client meeting. Doe worked from home the following day (August 6) and did not report to the Pentagon as instructed.[19]

---

[19] Doe notes that the Commission, "after making up facts not in the record, and arguments on behalf of the absentee employer, absurdly claims that Doe's own testimony was used to determine that Doe committed misconduct." Doe did testify to or admit the facts relied

- 21 -

Following a client presentation at the Pentagon on August 7, 2019, Marshall approached Doe to conduct the meeting. Doe initially refused to meet. He eventually agreed to meet if a human resources representative was present, and that request was granted. During the meeting, Marshall asked what Doe had been working on at home. Doe was given the opportunity to speak privately with the human resources representative. He was then asked a second time what he had been working on at home and to account for his time teleworking. Doe did not comply with or respond to this request. Doe was then fired.

The employer instructed Doe to work on-site for the week, and he did not. The president of the company asked Doe at least twice what he had been working on during his hours working from home, and Doe did not provide that information. These were legitimate attempts to manage its workforce and understand what Doe was doing during the hours he was working from home. As such, these requests and instructions served the employer's legitimate business interests in managing its workforce and enforcing its expectations of workplace order. *See Trent*, 55 Va. App. at 569. Doe's refusal to follow the reasonable instructions of his employer was insubordination.

If the employer "presents *prima facie* evidence of misconduct, the burden shifts to the claimant to prove 'circumstances in mitigation of such conduct.'" *Id.* at 570-71 (quoting *Branch v. Va. Emp. Comm'n*, 219 Va. 609, 611-12 (1978)). There are many forms of mitigation evidence that may "singly or in combination, to some degree explain or justify the employee's

---

on by both the Commission and the circuit court. For example, Doe claimed in his motion to reconsider that the "record is not determinative as to whether [Doe] worked on site on Aug[ust] 6." Yet, when discussing the week he was fired, he was asked by the appeals examiner, "Okay, so that's what I was gonna [sic] ask you, did you actually ever work onsite, um, so, it sounds like Tuesday you didn't, Wednesday you did, and then you were fired anyway, correct?" He responded, "That's correct." The Tuesday referred to was Tuesday, August 6. Furthermore, just because the Commission weighed these facts differently than Doe and came to a different conclusion based upon them does not mean that it made up facts.

conduct." *Id.* at 571 (quoting *Gantt*, 7 Va. App. at 635). "Various factors to be considered may include: the importance of the business interest at risk; the nature and purpose of the rule; prior enforcement of the rule; good cause to justify the violation; and consistency with other rules." *Id.* (quoting *Gantt*, 7 Va. App. at 635).

Doe contends that Marshall's instructions to work from the Pentagon and to explain what he worked on while he worked remotely were part of a retaliatory scheme.[20] Doe testified before the Commission that he had reported his employer for threatening to unlawfully withhold his pay for failure to complete his time sheets. He contends that Marshall's instructions were retaliation against him for his "whistleblower grievance." The circuit court found these claims to be unpersuasive, and there is sufficient evidence in the record to support that conclusion. As the circuit court pointed out, the employer requested a meeting in the same text message that made the threat to withhold pay. And the employer made another request for a meeting prior to Doe alleging that the threat to withhold pay violated federal law. Thus, at minimum, the initial requests to meet could not have been retaliatory.

Furthermore, the record indicates that Doe initially provided conflicting reasons for his failure to report to the Pentagon after being so instructed.[21] At one point, he claimed that he had

---

[20] Doe's argument on brief to this Court focuses largely on the fact that he was not able to present evidence to demonstrate the extent of the retaliatory scheme because he could not subpoena witnesses. Because we find his assignment of error relating to the subpoenas is not preserved, we do not consider that argument here. He also points to facts in an affidavit and exhibit that are not properly in the record before us. Because they are not properly in the record before us, we do not consider those facts.

[21] Though he does not argue it to this Court, Doe made other mitigation arguments below. He argued that the employer failed to accommodate his disability when it did not allow him to file his time sheets late, though, as the circuit court noted, he did not raise this issue when he responded to the July 31, 2019 text, nor is there evidence that he requested an accommodation until August 5, 2019. He also claims that confidentiality prevented him from disclosing what he was working on to his employer. The circuit court also found this unpersuasive.

parenting responsibilities/childcare issues. He also claimed that he had client commitments that prevented him from reporting. At a different point, he claimed that Marshall told him instead to focus on a "time-sensitive client presentation" rather than worrying about meeting in person on August 5. He also presented an email claiming he could not meet in person because he had to speak with the HR representative about his grievance. Doe contends that these are not mutually exclusive. But it is the VEC, as the factfinder, who is responsible for "resolving questions of credibility and of controverted facts." *Gantt*, 7 Va. App. at 635. Therefore, the record supports the finding that Doe was discharged for misconduct and that his conduct was not justified.

### G. *Exhibit 12 (Assignment of Error 16)*

Doe argues that the circuit court erred by not allowing entry of Exhibit 12 "and other missing communications from the commission record." The circuit court, however, did not refuse to admit Exhibit 12. In its March 30, 2021 letter opinion, the circuit court expressly noted that although Doe argued that the VEC erred by not including his Exhibit 12 as part of the Commission record, Doe "never tendered that document to the [circuit c]ourt." Because Doe did not present Exhibit 12 to the circuit court, the circuit court did not have the opportunity to determine whether it should have been included in the record. *See Murray v. Commonwealth*, 71 Va. App. 449, 458 (2020) ("Error may not be predicated upon admission or exclusion of evidence, unless . . . the substance of the evidence was made known to the court by proffer." (alteration in original) (quoting Va. R. Evid. 2:103)). Because the circuit court did not have the opportunity to review Exhibit 12 or rule on the issue, that issue is not properly before us now. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."); Code § 60.2-625(A).

Doe's assignment of error also addresses the Commission's and the circuit court's failures to admit missing communications. Yet his argument on brief, in which he addresses Exhibit 12, does not address the missing communications. The only place in his brief where Doe discusses the "missing" communications is in relation to the Commission's alleged bias and its failure to distinguish between a case file and admitted evidence. But he does not explain or argue how the circuit court erred by refusing to admit these communications.[22] Because there is no argument relating to the admission of the "missing" communications, that issue is waived on appeal. *See* Rule 5A:20(e).

Doe also argues on brief that the circuit court erred in refusing to admit the affidavits of Noelle Osborne and Micah Rondinone as new evidence under 16 VAC 5-80-30(B). He does not, however, have a separate assignment of error relating to this issue. Nor does assignment of error 16 encompass this argument because assignment of error 16 specifically refers only to Exhibit 12 and the missing communications. *See Banks*, 67 Va. App. at 290 ("[W]e do not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error."). Consequently, we do not consider whether the circuit court properly refused to admit the affidavits.[23]

---

[22] The "missing" communications were presented to this Court in a separate filing from Doe. But they do not appear in the record from the circuit court. Thus, there is no evidence that they were presented to or ruled upon by the circuit court. *See* Rule 5A:18. Therefore, the issue is likewise not preserved.

[23] Additionally, the affidavit of Noelle Osborne is not part of the record before this Court. Doe did file it with the circuit court. It is not part of the record, however, apparently at Doe's request. In the email in which he submitted the affidavit to the circuit court, he specifically instructed the clerk "[t]he affidavit should not be filed in the case records at this time . . . ." The clerk appears to have followed his instructions. Consequently, even if the issue was properly presented in an assignment of error, the record before us is insufficient to review this issue. *See* Rule 5A:18.

H. *Allegations of Misconduct against the VEC Attorney (Assignment of Error 20)*

Doe argues that the "circuit court erred by not finding that the commission counsel deliberately withheld [her] knowledge of the relevant Jones case during discussions regarding the circuit court's jurisdiction to take additional evidence." Specifically, he argues that the failure to disclose the case violated Rule 3.3 of Virginia's Rules of Professional Conduct and that the circuit court erred by "not finding Commission counsel in contempt."

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Doe did argue in his objections to the final order that counsel failed to disclose *Jones v. Willard*, 224 Va. 602 (1983). But there is nothing in the record to establish that Doe raised the alleged failure prior to the entry of the final order. Nor is there any indication that Doe asked the circuit court to take any action against counsel, whether by way of contempt or other sanction. Accordingly, that issue is not preserved.[24] Moreover, *Jones* is distinguishable from this case and is therefore not controlling. Consequently, the issue is moot.

III. CONCLUSION

Because we conclude that Doe's assignments of error are either procedurally defaulted or without merit, we affirm the decision of the circuit court.

*Affirmed.*

---

[24] Rule 3:3(a)(3) provides that "[a] lawyer shall not knowingly . . . fail to disclose to the tribunal controlling legal authority in the subject jurisdiction known to the lawyer to be adverse to the position of the client and not disclosed by opposing counsel." Given the seriousness of such an allegation, we feel compelled to note that counsel did in fact disclose *Jones v. Willard*, 224 Va. 602 (1983), in her answer filed in the circuit court. Further, *Jones* does not provide an unqualified right to present new evidence. Rather it limits the circuit court to hear evidence of fraud, and, even then, it depends on the specific circumstances of the allegations.